MEDINA LAKE PROTECTION
ASSOCIATION, Appellants,

v.

BEXAR–MEDINA–ATASCOSA COUN-
TIES WATER CONTROL AND IM-
PROVEMENT DISTRICT NO. 1, Appel-
lee.

No. 04–81–00363–CV.

Court of Appeals of Texas,
San Antonio.

April 29, 1983.

On Appellee's Motion to Conform Judgment
and Opinion June 1, 1983.

See also, Tex.App., 640 S.W.2d 778.

Edward M. Lavin, San Antonio, for appellants.

Robert Wilson, Austin, for appellee.

Before CADENA, C.J., and CANTU and DIAL, JJ.

## OPINION

CADENA, Chief Justice.

Plaintiffs, Medina Lake Protection Association and several individuals, appeal from a judgment declaring that a road across the Medina Lake Dam and Spillway was not impliedly dedicated as a public road by defendant, Bexar-Medina-Atascosa Counties Water Control and Improvement District No. 1. We reverse and remand.

Plaintiffs originally filed this suit in Bandera County. Plaintiffs claimed that the road across the dam and spillway had been impliedly dedicated as a public road by defendant and that plaintiffs owned fee simple title to certain lands within the reservoir below the 1,084 foot contour line. Plaintiffs also sought a declaration that certain rules and regulations adopted by defendant were unenforceable. Defendant's plea of privilege was sustained and the case was transferred to Medina County, where it was docketed as Cause No. 8389. After such transfer, plaintiffs filed an "Application for Temporary and Permanent Injunction" seeking to enjoin defendant from placing a steel cable across the spillway, thus preventing plaintiffs' use of the road. The trial court entered an order which recited:

That Plaintiffs' application for temporary and Permanent Injunction be denied, that Plaintiffs take nothing against Defendant, ... that Defendant go hence

without day and that this cause be, and the same is hereby, dismissed. . . .

On December 10, 1979, plaintiffs filed their second amended original petition, asserting basically the same cause of action alleged in their original petition and first amended original petition but adding additional plaintiffs.

Defendant responded with the contention that the June 25, 1979, order denying the plaintiffs' application for temporary and permanent injunction adjudicated the entire controversy which was the subject matter of Cause No. 8389 adversely to plaintiffs. Defendant also moved that the causes of action relating to the invalidity of defendant's regulations and the question of title to real property be severed from the cause of action concerning the use of the spillway as a public road.

On October 3, 1980, the trial court dismissed plaintiffs' cause of action concerning title to land and overruled defendant's plea that the entire controversy had been disposed of adversely to plaintiffs by the June 25, 1979, order denying plaintiffs temporary and permanent injunctive relief. The court severed the two remaining causes of action, and the cause of action involving the question of implied dedication was assigned Cause No. 8389A and set for trial at a later date.

In the cause involving the validity of defendant's rules and regulations, the trial court permanently enjoined defendant from attempting to enforce such rules and regulations beyond the boundaries of the water district. This judgment was reversed by this Court. *Bexar-Medina-Atascosa Counties Water Control and Improvement District No. 1 v. Medina Lake Protection Association,* 640 S.W.2d 778 (Tex.Civ.App.—San Antonio 1982, writ ref'd n.r.e.).

In the case now before us (trial court No. 8389A), the trial court, sitting without a jury, held that defendant owned the spillway and that the road across the dam and spillway had not been impliedly dedicated as a public road by defendant.

Defendant's contention, by way of counterpoint, that plaintiffs' claim that the road across the dam and spillway was decided adversely to plaintiffs by the June 25, 1979, order denying plaintiffs' application for temporary and permanent injunctive relief is rejected. Although the June 25, 1979, order states that the "cause" is dismissed, it is clear, considering the entire order, that the trial court was disposing only of plaintiffs' application for injunctive relief. The sequence of events clearly supports this conclusion.

After the suit had been transferred to Medina County, defendant erected a steel cable to prevent the use of the road in question by motor vehicles. This occurred on March 15, 1979. Plaintiffs' application for injunctive relief, filed April 11, 1979, sought only injunctive relief against the maintenance of such obstruction to their access to the road.

■ Insofar as the controversy now before us is concerned, plaintiffs sought a declaratory judgment that the road in question is a public road. In connection with a suit for declaratory judgment it is proper to seek ancillary injunctive relief. Where such ancillary relief is sought, the injunctive relief is merely a means of preserving the status quo pending final determination of the main cause of action on the merits or giving effect to the judgment rendered in the main suit. *Cook v. Smith,* 96 S.W.2d 318 (Tex.Civ.App.—Galveston 1936, writ dism'd).

■ The order on which defendant relies contains no reference to the plaintiffs' action for declaratory judgment. During the hearing on the application for injunctive relief, the trial court emphatically announced that no evidence relating to the merits of the case would be heard and that his decision would be confined solely to the question of propriety of granting the injunctive relief sought by plaintiffs. Under these circumstances, the order denying injunctive relief cannot be interpreted as a final judgment on the merits of plaintiffs' claim for declaratory judgment. *City of Corpus Christi v. Corpus Christi Police Officers Association,* 557 S.W.2d 182 (Tex.Civ.

App.—Corpus Christi 1977, writ ref'd n.r. e.); *Cook v. Smith, supra.*

The findings of fact filed by the trial court recite:

1. Defendant owns the dam and spillway which are wide enough to permit passage by only a single vehicle at a time and, because of a sharp turn in the dam, some long or wide vehicles cannot use the road.

2. Since landowners on the west side of the lake have had no other means of access to their property, defendant has permitted such landowners, service personnel serving them, and others to cross the dam and spillway when it has been safe to do so. Although not all of the plaintiffs have used the road, the primary use of the road has been by landowners.

3. Although defendant has permitted landowners and others to cross the dam and spillway, it has continuously asserted and exercised full control and dominion over such structures.

4. Medina County has never officially designated the spillway and dam as a public road. At various times in the past the County has provided maintenance on the spillway, consisting mainly of providing gravel which washes over the spillway at times of high water. It has been customary in the past for the County to perform maintenance work on private property. The County has never performed work on the dam.

5. Defendant has not expressly dedicated the surface of the dam or spillway as a public road, nor has it intended to impliedly dedicate such surface as a public road.

6. The surfaces of the dam and spillway have been used by the general public since 1935 with defendant's knowledge.

7. Landowners residing on the west side of Medina Lake have used the dam and spillway for many years.

8. Prior to 1980, landowners residing on the west side of the lake had no means of public access to their property, other than by boat, except across the dam and spillway.

The trial court's conclusions of law, based on the findings of fact listed above, were that defendant had not expressly or impliedly dedicated the surface of the dam or spillway as a public road and that such surface is not a public road.

■ In several points, plaintiffs assert that the findings of fact are unsupported by and contrary to the evidence. We construe plaintiffs' contentions as claiming that the findings are against the overwhelming weight and preponderance of the evidence. This means that we must consider all of the evidence and may set aside the court's findings only if we conclude from such examination and weighing of all of the evidence, that the findings are so against the overwhelming weight and preponderance of the evidence as to be manifestly unfair and unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

■ The theory of implied dedication, on which plaintiffs rely, rests on the presumption of an intent on the part of the landowner to devote his property to public use. It is based on "the idea that the owner consented to the use of his land as a highway to the extent that the court will hold that he dedicated it to public use, whether by express words, overt acts, or even by such inaction on the part of the owner as would justify a conclusion that he intended to dedicate the land to public use." *Owens v. Hockett*, 151 Tex. 503, 251 S.W.2d 957, 959 (1952). If the facts are sufficient to give rise to the presumption of intent to dedicate, all that is required to complete the dedication is public use of the land. *Viscardi v. Pajestka*, 576 S.W.2d 16 (Tex.1978). The existence of an implied dedication is a question of fact. *Id.*

The evidence clearly establishes, and the trial court found, public use of the road in question for 45 years prior to the trial. Therefore, we need concern ourselves only with the question of defendant's intent,

based on all of the facts and circumstances reflected by the record.

The evidence falls short of supporting the conclusion that the public use of the road was a permissive use only. The only evidence that any person ever sought defendant's permission is found in the testimony of Gene Boyd, one of the plaintiffs, that on one occasion he requested defendant's permission to remove a post and cable to enable him to move a house across the dam. While defendant granted permission to remove the post and cable, it is clear Boyd thought it necessary only to seek permission to remove the post, not permission to use the road in its ordinary state. There is no other testimony which even suggests that any person ever sought defendant's permission to use the road or that any person thought it was necessary to seek such permission.

There is uncontradicted testimony that the road was regarded in the community as a public road. The testimony conclusively establishes that Medina County maintained the road since 1935. The trial court's finding that it was customary for the county to do maintenance work on private property does not find sufficient support in the evidence. The only testimony concerning county maintenance work performed on private property came from a county commissioner who testified that there had been instances where the county did "blade work" or furnish gravel for private roads, but he testified, without contradiction, that that practice had stopped in 1969 or 1970 because the county was "enjoined by a local citizen" ... and was "prohibited from doing any further work of the nature". He testified that since 1935, the county performed maintenance work on the road at least once a year, consisting of hauling and packing gravel, grading, cutting back brush and filling "potholes". During his tenure as county commissioner, only the county did maintenance work on the road in question.

The finding that at all relevant times defendant asserted and exercised control and dominion over the road cannot stand. In addition to the testimony concerning exclusive county maintenance of the road, the record discloses no instance, prior to 1978, in which defendant used chains, locks, gates or other means of restricting public access to the road. While there is testimony that at times, in case of high water, barricades were set up, the evidence is insufficient to show whether such barricades were put in place by defendant or by the county's sheriff department. The testimony reveals at times of high water the users of the road determined for themselves whether the road could be safely traversed. Although defendant employed a caretaker, there is no evidence that such employee ever attempted to restrict access to the road by the public or that he otherwise attempted to interrupt, or interfere with, the public's use of the road. The fact that defendant executed a lease of land "adjoining" the spillway is irrelevant, particularly since there is no evidence indicating that such leasing arrangement interfered, or was inconsistent, with public use of the road.

No importance can be attached to the fact that the county had never designated the road as a public road or officially accepted it as a public road. Neither official adoption or recognition is necessary in cases of implied dedication. Public use of the road is sufficient to constitute an acceptance of the implied dedication. *Viscardi v. Pajestka, supra.*

Defendant relies on *Lee v. Uvalde County,* 616 S.W.2d 367 (Tex.Civ.App.—Tyler 1981, no writ), as supporting its contention that the intent to dedicate must be shown by something more than an omission or failure to act on the part of the owner. If *Lee* in fact stands for such a rule, it flies in the face of the holdings in *Owens v. Hockett, supra; Malone v. Whitfield,* 621 S.W.2d 192 (Tex.Civ.App.—Waco 1981, writ ref'd n.r.e.); *King v. Walton,* 576 S.W.2d 460 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.); *Seaway Co. v. Attorney-General,* 375 S.W.2d 923 (Tex.Civ.App.—Houston 1964, writ ref'd n.r.e.), and other cases. Moreover, *Lee* and *McMullen v. King,* 584 S.W.2d 706 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.), also relied on by

defendant, are distinguishable in that in both cases the evidence established use of the road by only a limited group of people rather than by the *general public*.

■ The evidence overwhelmingly preponderates against the trial court's conclusion that there had not been an implied dedication of the road in question as a public road.

■ Defendant claims that the theory of implied dedication cannot apply to the property of a governmental agency because the purported dedicated use would change the character, use and control of the property mandated by statute. This contention is without merit. *City of Tyler v. Smith County,* 151 Tex. 80, 246 S.W.2d 601 (1952). There is no evidence tending to show that use of the road by the public in any way interferes with the accomplishment of defendant's statutory purposes or responsibilities.

■ Defendant argues that the case is moot because Tex.Water Code Ann. § 50.052 (Vernon 1972), clothes it with the authority to close a public road. By its express terms, that statute does no more than allocate the cost of relocation of the road. It does not empower a municipal corporation such as defendant to close or even relocate a public road. The power to close a public road exists only if it is conferred by statute. *City of Mission v. Popplewell,* 156 Tex. 269, 294 S.W.2d 712 (1956). The powers of water control and improvement districts are measured by the terms of the statute creating them. They can exercise no authority other than that granted by the Legislature. Defendant has not called our attention to any statute which empowers it to close a public road. *See Lower Nueces Water Supply District v. Cartwright,* 274 S.W.2d 199 (Tex.Civ.App.—San Antonio 1954, writ ref'd n.r.e.).

■ Section 5.044(b) of the Water Code is of no help to defendant. It merely provides that where a public road is located on land required for a dam site, the commissioner's court shall change the road so that it does not interfere with the construction of the proposed dam. It confers no power on governmental agencies such as defendant. In any event, there is no showing that the road in question interferes with the construction of any proposed dam.

■ Defendant insists that TEX.REV. CIV.STAT.ANN. art. 6812h (Vernon Supp. 1982–1983) abolishes the doctrine of common law dedication and is controlling in this case. This case was tried on June 25, 1981, and the statute on which defendant now relies did not become effective until August 31, 1981. We decline to give retroactive effect to article 6812h. *Merchants Fast Motor Lines, Inc. v. Railroad Commission,* 573 S.W.2d 502 (Tex.1978).

The judgment of the trial court is reversed and the cause is remanded for a new trial.

## ON APPELLEE'S MOTION TO CONFORM JUDGMENT AND OPINION

Appellee has filed a motion to conform the judgment and opinion of this court rendered in this proceeding on April 29, 1983. We have determined that the judgment entered is in error and it is hereby vacated. The substituted judgment is as follows:

After hearing this cause and examining the record, the Court finds that the court below committed reversible error. It is therefore ORDERED that the judgment be reversed.

It is further ORDERED that Appellee, Bexar-Medina-Atascosa Counties Water Control and Improvement District No. 1, pay all costs of appeal and this decision be certified to the trial court.