779 P.2d 552

**John LUEVANO and Marilyn Luevano, Plaintiffs–Appellants,**

v.

**GROUP ONE and Group Five, Defendants–Appellees.**

**No. 10615.**

Court of Appeals of New Mexico.

July 21, 1989.

Erenio Gutierrez, Jr., Albuquerque, for plaintiffs-appellants.

Lester C. Cannain, Turpen, Cannain & Merchant, Albuquerque, for defendants-appellees.

OPINION

APODACA, Judge.

John and Marilyn Luevano (plaintiffs) appeal the trial court's order granting summary judgment to a group of landowners (Group Five) and ordering plaintiffs to tear down a fence between their property and adjoining properties owned by Group Five. Two issues are raised on appeal: (1) whether the order from which appeal is taken is a final appealable order, and (2) whether Group Five has a valid easement, thus requiring plaintiffs to tear down the fence. The trial court held that Group Five possessed a valid easement as the result of an assignment. Because we conclude the subject easement was an easement apurtenant and not an easement in gross, we hold it was not assignable. We thus reverse the trial court and remand for consideration and disposition of other issues not previously reached.

Plaintiffs own a tract of land of which the northern strip consists of a road running east and west, known as Los Poblanos Ranch Road. Group Five owns land abutting the north side of the west portion of the road. Another group of defendants (Group One) owns three tracts of land to the east of plaintiffs' tract, bounded on the north by the east portion of the road. In 1953, Albert G. Simms (Simms), plaintiffs' predecessor in title, granted a right-of-way over Los Poblanos Ranch Road to Group One, including William and Sophia Padilla (the Padillas). This easement included the entire road and was not limited to only the east portion of the road abutting the properties owned by Group One. That is, the easement extended beyond the Group One properties.

In 1987 plaintiffs constructed a fence along the northern boundary of the road, thus blocking Group Five's access to the rear of the homes belonging respectively to the members of that group. Plaintiffs then filed a quiet title action seeking to extinguish the western portion of the road easement. After suit was filed, Group Five obtained an assignment of the right-of-way from the Padillas. The trial court held this assignment was valid, granted

summary judgment to Group Five, and ordered plaintiffs to remove the fence.[1]

■ Before addressing the merits of the appeal, we must consider the threshold issue, whether the order appealed from was a final appealable order.

The original suit was filed by plaintiffs against Group One, seeking to extinguish that portion of Group One's easement beyond their properties (the portion of the road located between plaintiffs' and Group Five's properties). Group Five, joined as an indispensable party, answered and counterclaimed, alleging that they had an easement over the road, either by grant or prescription. Group Five also alleged the county owned the road. Group One likewise counterclaimed, requesting similar relief. Both groups of defendants, who are represented by the same attorney, also filed a cross-claim against the City of Albuquerque and Bernalillo County to declare Los Poblanos Ranch Road a dedicated road.

Plaintiffs filed a motion to dismiss their complaint, requesting that no attorney fees or costs be awarded. This motion was granted, leaving only defendants' counterclaims between plaintiffs and defendants. The remaining issues were thus Group Five's entitlement to an easement and the requested relief that the fence be torn down, based on any one of three possible theories: grant, prescription, or dedication. Because the trial court found that Group Five had an easement by grant, it did not reach the questions of prescription or dedication. In so holding, the trial court did state, however, that there were questions of fact on those issues precluding summary judgment.

In their brief-in-chief, plaintiffs argue at length that the trial court erred in not granting their summary judgment motion on the questions of prescription or road dedication. Since the trial court held in favor of defendants on the grant issue,

however, the trial court found it unnecessary, and therefore did not have the opportunity, to rule on the road dedication or prescriptive easement issues. An appellant has the burden of showing that a question presented for review on appeal was ruled upon by the trial court. *Batchelor v. Charley,* 74 N.M. 717, 398 P.2d 49 (1965). A motion not ruled on by a trial court is not before this court for review. *See Yucca Ford, Inc. v. Scarsella,* 85 N.M. 89, 509 P.2d 564 (Ct.App.1973). Consequently, we do not address the prescription and dedication issues.

In deciding whether an order is final and appealable, the determinative question is whether there is anything remaining to be done or whether the trial court, within its power, has fully disposed of the case. *Rio Arriba County Bd. of Educ. v. Martinez,* 74 N.M. 674, 397 P.2d 471 (1964); *In re Estate of Foster,* 102 N.M. 707, 699 P.2d 638 (Ct.App.1985); *Johnson v. C & H Constr. Co.,* 78 N.M. 423, 432 P.2d 267 (Ct.App.1967). In this case there are no claims remaining to be tried. Plaintiffs' claims and the matter of attorney fees were disposed of in the order of dismissal, and defendants' claims were adjudicated in their favor in the granting of summary judgment. The order granting summary judgment was thus a final appealable order. Having so held, we next proceed to the issue on the merits.

■ The specific issue before us is whether the easement was assignable. The answer to this question in turn depends on whether the easement granted to Group One by Simms was an easement appurtenant or an easement in gross. If it was an easement appurtenant, it is deemed to run with the land and is unassignable in the absence of a transfer of the dominant estate. *Kikta v. Hughes,* 108 N.M. 61, 766 P.2d 321 (Ct.App.1988). An easement in

---

1. The facts of this case are classic horn-book law. In his property law textbook, Professor Rabin gives the following example:

   EXAMPLE: X, owner of Blackacre, grants Y, owner of Whiteacre, an adjoining parcel, an easement of ingress and egress across a road on Blackacre.

RESULT: Unless the granting instrument clearly specifies that the easement is personal to Y, it will be assumed that it is an easement appurtenant to Whiteacre.
E. Rabin, Fundamentals of Modern Real Property Law 434 (2d ed. 1982).

gross, however, may be assignable. *See* 3 R. Powell, *The Law of Real Property* ¶ 419 (P. Rohan rev. ed. 1987).

Plaintiffs argue that the law favors easements appurtenant and that ambiguous grants should be resolved in favor of finding them appurtenant. On the other hand, defendants argue that the grant was not related to any particular land and was therefore an easement in gross, capable of being assigned. The trial court specifically concluded that the easement was clearly alienable, assignable, devisable and inheritable and that the Padillas consequently had authority to assign their right-of-way to Group Five.

The grant does not expressly refer to any land owned by the grantees. In construing a grant, however, a court must consider the circumstances surrounding it. "If the granting instrument does not specify whether the easement is appurtenant or in gross, the court decides from the surrounding circumstances, but generally begins with the presumption that it is appurtenant." E. Rabin, *Fundamentals of Modern Real Property Law* 434 (2d ed. 1982). *See* Restatement of Property § 453 (1944); 28 C.J.S. *Easements* § 4 (1941). *See also Siferd v. Stambor*, 5 Ohio App.2d 79, 214 N.E.2d 106 (1966) (whether easement is appurtenant must be determined from language used in deed, the surrounding circumstances at the time the right was created, and the intention of the parties at the time the deed was executed); *Ernst v. Allen*, 184 P. 827 (Utah 1919) (an instrument attempting to create an easement should be read in light of surrounding circumstances, the situation of the parties and property involved; if the grant refers to no land to which the easement can be appurtenant, but such land in fact exists, that fact may be established to give effect to the words used).

The record reflects that the grantees of the easement, Blas and Eloisa Gutierrez, Benjamin Gutierrez, and the Padillas, owned the three tracts of land adjoining the property of Simms, the grantor. All properties abutted the east portion of the road over which the easement was granted.

Although the grant does not expressly refer to the grantees as landowners, it may be inferred from these particular circumstances that Simms intended the easement to benefit the grantees as owners of adjoining property, giving them convenient access to their respective land and not access in general as to any other lands. In the event that any of the grantees were to sell their respective land, the record does not reflect any benefit to be derived by them in retaining any interest in the right-of-way. There would be considerable benefit, on the other hand, to any party succeeding to their interests in the particular land. In view of these circumstances, we believe it is reasonable to conclude that Simms' intent was to create an easement appurtenant to the adjoining three tracts of land belonging to Group One.

■ Our conclusion is reinforced by the presumption favoring easements appurtenant over easements in gross. Easements are presumed appurtenant unless there is clear evidence to the contrary. *Cushman v. Davis,* 80 Cal.App.3d 731, 145 Cal.Rptr. 791 (1978). *See* E. Rabin, *supra;* R. Powell, *supra,* at ¶ 405; C.J.S., *supra,* at 637 ("An easement is appurtenant to the land, if it is so in fact, although it is not declared to be so in the deed or instrument creating it; and an easement, which in its nature is appropriate and a useful adjunct of land owned by the grantee of the easement, will be declared an 'easement appurtenant,' and not 'in gross,' in the absence of a showing that the parties intended it to be a mere personal right." (Footnotes omitted)). *See also Brooks v. Tanner*, 101 N.M. 203, 680 P.2d 343 (1984) (there is a strong constructional preference for appurtenant easements over easements in gross); *Allingham v. Nelson*, 6 Kan.App.2d 294, 627 P.2d 1179 (1981) (quoting 25 Am.Jur.2d, *Easements and Licenses* § 13 (1966)) (to the effect that an easement will never be presumed as personal when it may fairly be construed as appurtenant to some other estate); *Hall v. Meyer*, 270 Or. 335, 527 P.2d 722 (1974) (extremely strong preference for finding an easement appurtenant rather than in gross).

We believe there are good policy reasons for the presumption that an easement is appurtenant. Construing doubtful easements as easements in gross would allow assignment of the easement to strangers to the area who could then control the use of the property. Such construction could also result in increased burdens on land beyond that contemplated by the original grantor. *See Brooks v. Tanner* (burden on a servient estate cannot be increased without the owner's consent). Permitting the Padillas to assign their rights to the Group Five defendants clearly would result in an increased burden on plaintiffs' land.

Defendants emphasize the repeated use of the phrase "heirs and assigns" in the grant. They argue that this indicates the grantor intended to convey an assignable interest. We believe, however, that these words were traditionally used at common law merely to create an estate in land and not necessarily intended to create an assignable interest in land. On the contrary, the phrase could be interpreted to signify that the easement was tied to land. "The use of 'heirs or assigns,' or other similar words, in designating the person to whom the right is granted or reserved, is generally held to create an appurtenant easement." C.J.S., *supra,* at 637 (footnote omitted). *See Siferd v. Stambor.*

> The wording of the deed purports to grant the property to [grantee] and "its successors and assigns forever." These words of inheritance and succession, although not required by statutes ... were considered at common law equally necessary to create either a fee simple title or a perpetual easement.... The use of this phrase is of no assistance in determining the intent of the grantor. [Citations omitted.]

*Northwest Realty Co. v. Jacobs,* 273 N.W.2d 141, 145 (S.D.1978).

In light of inferences that may be drawn from the circumstances surrounding the grant from Simms to Group One, as well as the preference for easements appurtenant and the policy against increasing the burden on a servient estate without the owner's consent, we hold that the grant in this appeal created an easement appurtenant that cannot exist separately from the dominant estate. Any attempt, therefore, to assign the easement, without transferring the land to which it attached, must necessarily fail. *See Kikta v. Hughes.*

In conclusion, because the attempted assignment of the easement to Group Five was not valid, we reverse the grant of summary judgment. The case is remanded to the trial court for a determination of whether Group Five has acquired rights to the road by prescription or dedication. Plaintiffs are awarded costs on appeal.

IT IS SO ORDERED.

DONNELLY and ALARID, JJ., concur.