874 P.2d 788

Marilyn LUEVANO and Charles Luevano, Plaintiffs–Appellants,

v.

Herman MAESTAS and Margaret Maestas, his wife; Kenneth Maestas; Lester C. Cannain and Carolyn S. Cannain, his wife; Larry O. Bryant and Sally A. Bryant, his wife; Daniel J. Mayfield and Teresa G. Mayfield, his wife; Nolan Dean Neff and Linda J. Neff, his wife; Kenneth Leppke and Carla B. Leppke, his wife; Eddie L. Lucero and Louise S. Lucero, his wife; Ambrosio J. Ortega and Eva P. Ortega, his wife; Robert O. Sigmund and Sheila Sigmund, his wife; Jack W. Tipps and Lutresha Tipps, his wife; Eugene Burch and Ann Burch, his wife; Albert G. Simms II, M.D., as Personal Representative of the Estate of Albert G. Simms, Deceased; Sunwest Bank of Albuquerque, as Personal Representative and Trustee for the Estates of John F. Simms Jr., Deceased, and Ruth Simms, Deceased, his wife; The following heirs of John F. Simms Jr., Deceased, and Ruth Simms, Deceased, his wife; John F. Simms III, Quita Simms Benton, Charlotte Simms, Joshua R. Simms, Thomas A. Simms, and Joseph Simms; Caballero Farms Ltd., a New Mexico Limited Partnership; The City of Albuquerque; The County of Bernalillo; and All Unknown Claimants Or Parties Who May Claim An Interest in the Use or Ownership of the Road, Defendants–Appellees.

No. 14310.

Court of Appeals of New Mexico.

April 6, 1994.

Erenio Gutierrez Jr., Albuquerque, for plaintiffs-appellants Marilyn and Charles Luevano.

Lester C. Cannain, Albuquerque, for defendants-appellees Eugene and Ann Burch.

Sally Joyce Galanter, Albuquerque, for defendants-appellees Lester C. and Carolyn S. Cannain.

Kevin J. McCready, Myers & Oliver, P.C., Albuquerque, for defendants-appellees Herman, Margaret and Kenneth Maestas.

David S. Campbell, City Atty., Kevin J. Curran, Asst. City Atty., Albuquerque, for defendant-appellee City of Albuquerque.

Richard M. Leverick, Leverick and Musselman, P.C., Albuquerque, for defendants-appellees Jack W. and Lutresha Tipps and Robert O. and Sheila Sigmund.

J. Edward Hollington, J. Edward Hollington & Assoc., Albuquerque, for defendant-appellant County of Bernalillo.

Daniel J. and Teresa G. Mayfield, pro se.

Nolan D. and Linda J. Neff, pro se.

Kenneth and Carla B. Leppke, pro se.

*OPINION*

MINZNER, Chief Judge.

Plaintiffs appeal the district court's order granting Defendants' motion for summary judgment and denying Plaintiffs' motion on a Complaint for Declaratory Judgment. Having determined there were no material issues of fact in dispute, the district court held that Defendants were entitled as a matter of law to use Los Poblanos Ranch Road (the road), which lies between property owned by Plaintiffs and property owned by Defendants in Albuquerque's north valley, on several of the theories advanced by Defendants. We affirm the district court's decision that the public acquired rights by implied dedication.

*BACKGROUND*

In 1941, the road was deeded to Albert G. Simms in fee simple. In 1953, he granted an easement appurtenant in the road to several neighboring landowners who lived south of the road. *See Luevano v. Group One*, 108 N.M. 774, 777, 779 P.2d 552, 555 (Ct.App. 1989). Subsequently, Plaintiff Marilyn Luevano and her husband John (since deceased) acquired a portion of one of the tracts to which the easement was appurtenant.

The road runs east-west, leading to a dead end at an irrigation ditch at its western end and providing access to Guadalupe Trail at its eastern end. Plaintiffs' land abuts the western portion of the road. Defendant neighbors own lands located on the north side of the road. The eastern portion of the road was annexed by the City in 1986 and later paved. The western portion of the road lies in Bernalillo County.

In *Luevano*, this Court considered a prior attempt by Plaintiffs to determine the nature of their interest in the road. At that time, Plaintiffs sought to foreclose access to the western portion of the road by their adjoining neighbors, as well as to determine whether their neighbors north of the road were entitled to any access at all. The neighbors north of the road relied on an assignment of an interest in the easement appurtenant by two of Plaintiffs' adjoining neighbors south of the road. This Court determined that the easement was appurtenant to the land and non-assignable, and we remanded the matter to the district court for a determination of whether the defendants who lived north of the road had acquired rights by prescription or dedication. *Id.* at 778, 779 P.2d at 556. On remand, the district court determined that the heirs of Albert G. Simms were the owners in fee simple of the road and dismissed the lawsuit without prejudice because it lacked indispensable parties.

In 1989, Plaintiffs again brought suit in Bernalillo County district court to limit use of the road. Initially, there were three defendants, Herman L., Margaret, and Kenneth L. Maestas. Subsequently, in 1991, Plaintiffs amended their complaint to include what appears to be all of their neighbors north of the road, as well as the City of Albuquerque, Bernalillo County, and heirs of Albert G. Simms. Shortly thereafter, Defendant heirs to Albert G. Simms accepted service, but disclaimed and abandoned any interest in the road. Several Defendants counterclaimed or cross-claimed. In ruling on the motions for summary judgment, the district court considered the following undisputed facts.

From 1967 to 1988, Plaintiffs operated Albuquerque Garage Door Sales and Service, Inc., on their property. During the same period, they advertised in the Yellow Pages that the business was located on the road, and their customers, suppliers, and employees used the road to reach the business. Plaintiffs have since moved the business to Edith Boulevard. In 1987, Plaintiffs built a fence of barbed wire and railroad ties on the north side of the road that blocked access by the landowners on that side.

The County maintained the length of the road from 1974 to 1987 by inspecting, grading, watering, and levelling it. Plaintiff Marilyn Luevano or her husband objected to this maintenance in 1987. Since then, the County has maintained the road, except for the portion that abuts Plaintiffs' property. The County Assessor lists the road as a public road, and there is no taxpayer of record for the land comprising the road. The City paved its portion of the road, installed water and sewer lines under the entire road pursuant to a public utility easement granted by the district court in *Luevano,* upon stipulation of the parties, and installed fire hydrants along the north side of the road. The County has placed street signs on the road and changed its name. Mail is delivered to addresses on the road.

Plaintiffs sought the following relief from the district court: (1) a bar to Defendant neighbors' use of the road for ingress and egress; (2) a declaration that the entire road is a private easement, with access limited to those who own property on the south side of the road; and (3) permission to extend the fence the full length of the road. Defendants' counterclaims or cross-claims were based on various theories, and not all Defendants made the same claims. However, Defendants joined in a single motion for summary judgment raising several theories, and the district court recognized all but one as applicable and supporting the motion.

On appeal, Plaintiffs contend the district court erred in determining that (1) the road is a public road either under NMSA 1978, Section 67-2-3 or by common law dedication; (2) the public has a public prescriptive easement to use the road; and (3) Defendants Mayfield and Maestas have private prescriptive easements to use the road to access their properties that abut the road. It is undisputed that Plaintiffs have an easement appurtenant in the road. Plaintiffs primarily contended at trial and argue on appeal that their easement appurtenant precluded recognition of an easement or other rights in the public. Although the amended complaint contained allegations that Plaintiffs' right of use had been unreasonably infringed, *see Dyer v. Compere,* 41 N.M. 716, 722, 73 P.2d 1356, 1360 (1937); *Huff v. McClannahan,* 89 N.M. 762, 765, 557 P.2d 1111, 1114 (Ct.App.), *cert. denied,* 90 N.M. 8, 558 P.2d 620 (1976), Plaintiffs seem to have relied more heavily on a legal claim that the easement appurtenant afforded them and other landowners south of the road an exclusive right to use it. That argument is too broad, and we begin by analyzing the nature of Plaintiffs' rights in the road.

## DISCUSSION

The interest created by an easement is a right of use, measured by the nature and purpose of the grant, "and, so far as [is] consistent therewith, the owner of the fee may make any reasonable use desired of the land in which the easement exists." *Dyer,* 41 N.M. at 720, 73 P.2d at 1359; *see also Huff,* 89 N.M. at 765, 557 P.2d at 1114 ("Whether the gates unreasonably interfered with plaintiffs' right of passage was a question of fact."). Since the owner may make reasonable use of the land in which the easement exists, he or she should be able to grant others the same right. Thus, while the fee owner might complain about use of the road by those to whom no express or implied permission has been given, the holder of an easement appurtenant ordinarily cannot complain if the owner of the fee gives others the same right.

Plaintiffs appear to concede this point regarding their adjoining neighbors south of the road. In *Luevano* they sought to quiet title to "the western portion of the road easement." 108 N.M. at 775, 779 P.2d at 553. One group of defendants were landowners south of the road. *Id.* This Court recognized an easement appurtenant to the tracts south of the road and adjoining Plaintiffs' property to the east. In this lawsuit, Plaintiffs have named as defendants only those neighbors north of the road, and thus appear to acknowledge the landowner's right to grant an easement appurtenant to several adjoining landowners.

In this case, however, Plaintiffs continue to assert a superior right. That is, they at least implicitly contend that their easement appurtenant creates rights that are superior to those that Defendants allege have arisen

from public use. This argument is not supported by the common law of easements.

■ An easement appurtenant is subject to extinction by prescription of the estate to which the easement is appurtenant. "An easement is extinguished by prescription through a use made by the possessor of a servient tenement of land in his own possession." V *Restatement of Property* § 506 cmt. b (1944). The use must be adverse, and for the period of prescription, continuous and uninterrupted. *Id.* *Luevano* specifically allowed for that possibility. 108 N.M. at 778, 779 P.2d at 556. The same principle logically applies to implied dedication, which as recognized in the case law is sometimes difficult to distinguish from prescription. *See generally* Virgil Childress, *Does Public User Give Rise to a Prescriptive Easement or Is It Merely Evidence of Dedication?*, 6 Tex.L.Rev. 365 (1928) [hereinafter Childress].

■ An easement is also subject to extinction by estoppel. V *Restatement of Property* § 505. On some facts, long-standing use of a road coupled with inaction by the landowner may give rise to an easement by estoppel. *Id.* *Cf. Luchetti v. Bandler*, 108 N.M. 682, 685, 777 P.2d 1326, 1329 (Ct.App.) (assuming but not deciding that New Mexico would recognize an easement by estoppel), *cert. denied*, 108 N.M. 681, 777 P.2d 1325 (1989).

Because Plaintiffs have a right of use which is not only not exclusive but is also subject to loss through use by others, Defendants may have been entitled to summary judgment without a determination that the public had acquired rights in the road. For example, most of Defendant neighbors use the road only for backyard access, and there was no showing that such use restricted or unreasonably affected Plaintiffs' use. For some of Defendant neighbors, a private prescriptive easement might have been adequate protection.

Nevertheless, some Defendants counterclaimed for a determination that the road is public, and their claims became one basis for the motion for summary judgment in favor of Defendants. Plaintiffs have erected a fence in asserting their claim to bar Defendant

neighbors' use and asked for the right to extend it. Most if not all of the parties apparently agreed to let the fence stand pending resolution of this appeal. We conclude that the fate of the fence is the real issue or matter in controversy. *See* NMSA 1978, § 44–6–2 (Declaratory Judgment Act requirements). Resolution of that controversy depends on whether the road is public or the public otherwise has rights to use the road. In order to determine whether the road is private or public, we begin by stating the applicable law relative to easements in the public created by prescription.

### 1. *Public Prescriptive Easement*

"The use necessary to acquire title by prescription must be open, uninterrupted, peaceable, notorious, adverse, under a claim of right, and continue for a period of ten years with the knowledge or imputed knowledge of the owner." *Hester v. Sawyers*, 41 N.M. 497, 504, 71 P.2d 646, 651 (1937). In *Village of Capitan v. Kaywood*, 96 N.M. 524, 632 P.2d 1162 (1981), the village sought a permanent injunction against the Kaywoods to prevent them from blocking a public road. The trial court dismissed the village's petition and granted the Kaywoods the right to maintain a fence across the road. The Supreme Court reversed the trial court's conclusion that the village had not established a public right-of-way by prescriptive easement on a road in an inhabited subdivision. The Court noted that "[a] public right-of-way by prescription may be established by usage by the general public continued for the length of time necessary to create a right of prescription if the use had been by an individual...." *Id.* at 525, 632 P.2d at 1163. The Court also noted that "[i]n the absence of proof of express permission, the general rule is that the use will be presumed to be adverse under claim of right." *Id.*

In the present case, the only facts in dispute concerned the frequency with which the County maintained the road and the date Plaintiffs first protested this maintenance. On the latter point, the district court rejected the affidavit of Plaintiffs' son because it was not based on sufficient personal knowledge, and found no protests by Plaintiffs until 1987.

Plaintiffs do not challenge that ruling on appeal. In any event, the affidavit claimed only sporadic maintenance, while the County and the private Defendants claimed that the County performed grading and other maintenance on the road every six weeks to two months. The district court indicated that it believed the road was graded at least twice a year.

The other evidence was as follows. There was evidence by interrogatory of Defendants Maestas that they used the road to enter their properties, without the permission of the fee owner, since 1950. There was evidence by Defendant Mayfield that he used the road to enter his land from the south without permission from 1975 to 1987. There was affidavit testimony by Defendant William Padilla that he had seen Defendant neighbors use the road from 1970 to 1987. Plaintiff Marilyn Luevano provided affidavit testimony that neighbors used the road without permission.

Plaintiffs cite *Herbertson v. Iliff*, 108 N.M. 552, 555, 775 P.2d 754, 757 (Ct.App.), *cert. denied*, 108 N.M. 485, 775 P.2d 251 (1989), to support the proposition that the use of the road by tenants, business invitees, guests, and others who provided services is insufficient to establish public use of the road. *See also* 4 Herbert T. Tiffany, *The Law of Real Property* § 1212, at 1055 (3d ed. 1975) ("while travel over the land need not be frequent, it must not be confined to persons who can be identified or segregated from the members of the community as a whole, that is, user by the public does not mean user by certain specific members of the public."); *American Nassau Bldg. Sys. v. Press*, 143 A.D.2d 789, 533 N.Y.S.2d 316, 318–19 (1988), *app. den.*, 73 N.Y.2d 705, 539 N.Y.S.2d 298, 536 N.E.2d 627 (1989) (use or potential use by public of private dead end road will not, alone, transform it into public street; road must also have been kept in repair or taken in charge and thus adopted by public authorities during period in question).

■ We agree with Plaintiffs that the evidence of use by their business invitees is not sufficient to establish the public character of the road as a matter of law, and thus to support summary judgment. That is be-

cause their invitees' use was use in effect by them. *See J.F. Gioia, Inc. v. Cardinal Am. Corp.*, 23 Ohio App.3d 33, 23 O.B.R. 76, 491 N.E.2d 325, 331 (1985). "No adverse public use resulted when the public utilized [an] access drive to reach a specific business adjacent to it." *Id.* We also agree with Plaintiffs that the evidence of use by Defendant neighbors is not sufficient to establish the public character of the road. *Cf. American Nassau Bldg. Sys.*, 533 N.Y.S.2d at 319 (residents of dead-end street, who had accepted benefits of residing on publicly-maintained roadway for more than twenty years, were estopped from asserting street was private way). However, there is more here than use by Plaintiffs' invitees and by Defendant neighbors.

There was also evidence from the County Assessor that the road is shown in public records as a public road. There was evidence by interrogatory of Defendants Maestas that when they purchased their present home they believed the road was public, and they also indicated that their predecessors in interest had used the road since 1950 and that they "thought the road was a public road as early as we can remember." Defendants Mayfield provided affidavit testimony that when they purchased their property, the road was referred to as a county road.

Thus, there is evidence of the road's reputation as public. *See Jicarilla Apache Tribe v. Board of County Comm'rs*, 116 N.M. 320, 330, 862 P.2d 428, 438 (Ct.App.), *cert. denied*, 116 N.M. 553, 865 P.2d 1197 (1993). This evidence "support[s] the general proposition that the road was open to the public." *Id.*

In this case, the evidence of the road's reputation as public was not rebutted by Plaintiffs. However, we are reluctant to conclude, on this record, that the evidence of prescription was sufficient to support judgment for Defendants as a matter of law.

In *Trigg v. Allemand*, 95 N.M. 128, 132, 619 P.2d 573, 577 (Ct.App.1980), this Court noted that a public highway can be established by use alone. The Court observed:

"[F]requency of use or number of users is unimportant, it being enough if use of the road in question was free and common to

all who had occasion to use it as a public highway." *Discher v. Klapp,* 124 Ind.App. 563, 117 N.E.2d 753, 757 (1954). Once a road is found to be open to the public and free and common to all citizens, they [sic] should be open for all uses reasonably foreseeable. *Westlake v. Duncan, Dieckman & Duncan Mining Co.,* 228 Ark. 336, 307 S.W.2d 220 (1957).

*Id.* at 133, 619 P.2d at 578. *Trigg* emphasizes character rather than amount of use. Following this reasoning were *Koch v. Mraz,* 334 Ill. 67, 165 N.E. 343, 346 (1929) (test is whether public generally had free and unrestricted right to use road) and *Town of Sparta v. Hamm,* 97 N.C.App. 82, 387 S.E.2d 173, 176–77 (public's continuous, though slight, use of street as mail route, school route and for general travel for more than twenty years established public easement by prescription), *rev. den.,* 326 N.C. 366, 389 S.E.2d 819 (1990).

Under *Trigg,* the evidence of the road's reputation certainly would support an inference of public use. However, that reputation might have arisen at least in part as a result of Plaintiffs' business and the use made by their invitees. Under *Herbertson,* we think the evidence of prescription gave rise to an issue or issues of fact. We next address the evidence of implied dedication.

### 2. *Common Law Dedication*

The district court concluded that the road was public as a result of a dedication by the owner under common law. *See Watson v. City of Albuquerque,* 76 N.M. 566, 417 P.2d 54 (1966). "[T]here must be both an offer of dedication by the owner and an acceptance by the city to constitute a complete dedication." *Id.* at 568, 417 P.2d at 55. Plaintiffs contend this common law principle is not applicable because Simms' heirs released their interest after the present suit was filed, and because the City has not done some act "which unequivocally shows an intent to assume jurisdiction." *Id.* at 569, 417 P.2d at 55. We disagree.

The purpose of the principle of common law dedication is to provide a mechanism for an intentional appropriation or donation of land by its owner for some proper

public use. *See* 23 Am.Jur.2d *Dedication* § 1 (1983). However, the owner's intent need not be express. "The owner's intention to dedicate land to the public may be manifested by his acquiescence in its use by the public, and dedication of the property may result from such acquiescence, provided the use is of the necessary character and duration." *Id.* at § 34 (footnotes omitted). The essential elements of implied dedication are acts by the landowner that induced the belief the landowner intended to dedicate the road to public use, the landowner was competent, the public relied on the acts and will be served by the dedication, and there was an offer and acceptance of the dedication. *Las Vegas Pecan & Cattle Co. v. Zavala County,* 682 S.W.2d 254, 256 (Tex.1984). "The theory of implied dedication ... rests on the presumption of an intent on the part of the landowner to devote his property to public use." *Medina Lake Protection Ass'n v. Bexar–Medina–Atascosa Counties Water Control & Improvement Dist. No. 1,* 656 S.W.2d 91, 94 (Tex.Ct.App.1983).

The elements of implied dedication, as stated above, and the underlying theory articulated above are reminiscent of language this Court used in *Trigg.* There, in recognizing an easement in the public by prescription, we said:

> What is exemplified by the language of the courts is the protection afforded adjoining land owners in the establishment of a public easement by prescription when one landowner sits idly by for ten or more years and grants persons free use of a roadway over his land.

*Trigg,* 95 N.M. at 133, 619 P.2d at 578. It is certainly true, as the district court judge observed at the hearing on the motions for summary judgment, that on particular facts the two seem closely related. We note that in *Trigg,* this Court relied on *Lovelace v. Hightower,* 50 N.M. 50, 168 P.2d 864 (1946), a case analyzing not only a claim based on prescription, but also based on the common law of dedication. We also note that the language in *Trigg* suggests this Court might have had in mind what the *Restatement of Property* describes as easement by estoppel. *See* V *Restatement of Property* § 505. As a

result, our cases do not provide with clarity a basis for distinguishing prescription from implied dedication. We are not unique.

 It has been suggested that the doctrine of implied dedication is a more appropriate vehicle for rights of way than the doctrine of prescription. *See* Childress, *supra* at 374–75. We note that the American Law Institute has under consideration a draft of *Restatement of the Law of Property (Servitudes)* that articulates a theory of prescription limiting the need for implied dedication. *See id.* Tentative Draft No. 3 § 2.18, at cmt. e (April 5, 1993) [hereinafter *Draft Restatement*]. In New Mexico, however, the Supreme Court has clearly recognized both the doctrine of public easement by prescription, *see Village of Capitan,* 96 N.M. at 525, 632 P.2d at 1163, and the doctrine of implied dedication, *see Lovelace,* 50 N.M. at 55, 168 P.2d at 867. It may be that in a different case it will be possible to clarify the operation of both principles by adopting one or the other, reconciling the differences in light of the public's interest in access to rights of way customarily open to all by developing the law of easements by estoppel or yet another approach. For purposes of resolving the issues raised in this appeal, however, it is not necessary to reconcile or distinguish at length the two common law principles on which Defendants relied. Defendants produced enough evidence of implied dedication to make a prima facie showing of entitlement to summary judgment. The fact that the same evidence supports a determination that the road was open to the public as required by *Trigg* for purposes of establishing a public prescriptive right is not a barrier to recognizing rights in the public by implied dedication. The two doctrines on facts such as these serve such a similar purpose that the overlapping evidence is to be expected.

The evidence that the road was regarded in the community as a public road, that the County maintained the road, and that the City made significant improvements to it indicates the landowner's intent, the public's reliance, and public benefit. *See Medina Lake Protection Ass'n,* 656 S.W.2d at 95. *See also Barstow v. State,* 742 S.W.2d 495, 506–07 (Tex.Ct.App.1987) (maintenance by public and acquiescence in expenditure of public funds by public authorities to adapt, improve, or maintain the roadway for use by the public are sufficient to support a finding of donative intent). Even after Plaintiffs protested county maintenance, the County continued to list the road as public. There is a street sign, and the County changed the road's name.

 The release by Simms' heirs does not indicate when Simms or his representative ceased to claim or exercise any interest in the road. Thus, the fact that the release was filed in the course of the present proceedings does not preclude an implied offer of dedication at an earlier point. *Cf. Lovelace,* 50 N.M. at 61, 168 P.2d at 873 (public use for ten years not necessary to effect acceptance of offer to dedicate contained in federal statute). Thus, that fact is not sufficient to rebut Defendants' prima facie showing of implied dedication. Further, the facts of this case, unlike those of *Watson,* do show an exercise of "dominion and control in such a way as to signify an acceptance." *Watson,* 76 N.M. at 569, 417 P.2d at 55. We conclude that the district court was entitled to grant summary judgment for Defendants on the evidence of implied dedication of the entire road. We briefly address Plaintiffs' remaining arguments, which include a claim that an unconstitutional taking has occurred.

### 3. *Remaining Arguments*

 Plaintiffs argue that the district court's ruling results in a taking of private property without compensation. *See* U.S. Const. amend. V; N.M. Const. art. II, § 20. Plaintiffs have not made a prima facie showing of a taking within the meaning of the federal or state constitutions. *Cf. Draft Restatement* § 2.18, at cmt. e. "Acquisition by prescription is not a taking and does not require compensation to the landowner for the servitude." *Id.* at 126.

 Plaintiffs also contend that the district court erred in recognizing the road as public under Section 67–2–3, which provides as follows:

Where as the congress of the United States has declared all post roads over

which the mails of the United States are carried to be public roads. It is likewise declared by this section that all such roads are public roads; provided, however, that discontinuance of mail service, and nonuser [nonuse] by the public for three years shall constitute abandonment and vacation of such roads for such roads for such public purpose.

Plaintiffs contend the statute contemplates a road that is already public and simply confirms a fact, rather than characterizing a private road as public. We do not think that is an appropriate construction of the statute because, as Defendants note, it makes the statute unnecessary. Further, we believe for the reasons stated above that the public acquired rights in the road by implied dedication, and thus Plaintiffs' argument depends on a fact not present in this case. Finally, the law of implied dedication gives the public greater rights than the legislature has provided under the statute and, in view of our disposition, we do not address the statute further.

Perhaps legislative authorization would be appropriate in order to simplify and thus make less expensive litigation between neighbors over use of a road. That we do not have. *Cf.* § 67–2–3 (discontinuance of mail service and non-user by public for three years constitutes abandonment). In the absence of a statute more directly on point, however, the common law doctrine of implied dedication provides an adequate alternative.

Plaintiffs also contend the district court erred in determining that Defendants Maestas and Mayfield had acquired easements by prescription for access to their property. This appears to have been an alternative holding, intended to resolve as much of the dispute as possible and bring to a close a lengthy litigation. Having recognized rights in the public, we believe Plaintiffs are correct to suggest that private easements by prescription are inconsistent. *Garmond v. Kinney*, 91 N.M. 646, 647, 579 P.2d 178, 179 (1978), held that a finding that the general public had used a road was inconsistent with the conclusion that a private prescriptive easement had been established. *See also* George W. Thompson & John S. Grimes, *Commentaries on the Modern Law of Real Property* § 342, at 212 (1980 Repl.) ("One cannot, by using land as a road in common with the public generally, acquire a prescriptive right-of-way against the owner." (Footnote omitted.)). However, Defendants Maestas and Mayfield appear to have conceded the validity of this argument, and in view of that concession and our disposition, we conclude this issue is moot.

CONCLUSION

We affirm the district court's grant of summary judgment to Defendants on the grounds that the public has acquired rights by implied dedication. The fence that Plaintiffs built is incompatible with these rights, as the district court acknowledged. On remand, the district court shall issue such supplemental orders as are appropriate and consistent with this opinion.

IT IS SO ORDERED.

ALARID and FLORES, JJ., concur.