619 P.2d 573

**James Henry TRIGG and Louise Baker Trigg, Plaintiffs–Appellants,**

v.

**Adrian ALLEMAND and Jim H. Wallace, Tommy Wallace and Randy Wallace, d/b/a Wallace, Wallace and Wallace, Defendants–Appellees.**

**No. 4450.**

Court of Appeals of New Mexico.

Oct. 21, 1980.

Roberto C. Armijo, Las Vegas, for plaintiffs–appellants.

Arthur L. Bustos, Las Vegas, for defendants–appellees.

## OPINION

SUTIN, Judge.

The district court ordered that defendant Allemand and other property owners of land located on Apache Mesa have a right of ingress and egress over a road that is the subject matter of this lawsuit; that plaintiffs Trigg are permanently enjoined from obstructing the use of access to the road or the gates leading thereto; that neither party was entitled to damages; and each party was to defray its own expenses.

The Triggs appealed. Defendants cross–appeal from that portion of the judgment that denied them damages on their counterclaim and required them to defray their own expenses.

We affirm the result reached by the trial court as to plaintiffs and reverse as to the cross–appeal on the issue of damages, but affirm as to defrayment of expenses.

The court made the following pertinent findings of fact and conclusions of law.

### FINDINGS OF FACT

1. Plaintiffs and Defendant Adrian Allemand * * * are residents of San Miguel County, New Mexico.

* * * * * *

3. Plaintiffs are the owners and in possession of certain real estate situate in San Miguel County, New Mexico. * * * For many years prior hereto Plaintiffs have engaged in cattle ranching activities on said real estate, which is located on top of what is commonly known as Apache Mesa.

4. Plaintiffs are also in possession and control under lease of certain lands belonging to the State of New Mexico, more fully described as follows:

Situate in San Miguel County, New Mexico: Lots 1, 2, 3, 4, Section 36, T14N, R16E, N.M.P.M., also located on Apache Mesa.

5. Defendant Allemand is owner and in possession of certain real estate adjacent to that of Plaintiffs, the bulk of which lies generally to the north and east of Plaintiffs' real estate, the quantity of which is substantially the same or greater than the quantity of Plaintiffs' real estate.

6. Prior to September, 1978, Wallace contacted Allemand and Trigg, individually, about logging portions of said lands and, thereafter, Wallace entered into a timber sales contract with Allemand, said contract to be effective from August, 1978 to August, 1983.

7. Allemand's lands are accessible by a road which leads from U.S. Highway "84" easterly across; first, the lands of

one Rodman; second, state owned land held under lease by Trigg; third, private lands of Trigg and Allemand; fourth, other private lands; and finally, lands belonging to Allemand, being the premises from which timber is being taken.

8. Said road, referred to in Finding No. 7 above, has been used by owners of lands lying to the south and east of the said state lands since said lands were first settled, even prior to issuance of the United States Government deeds to which plaintiff Trigg traces his title to his said lands; said road was used for extensive logging and lumbering purposes during the construction of the A. T. & S. F. Railroad line, which runs adjacent to the said U. S. Highway "84" for several miles in the vicinity of the lands in question.

9. The only means of ingress and egress * * * has run the same course for a period in excess of ten years, except for minor deviations caused by the road becoming impassible [sic], or changed because of obstructions erected or constructed by Trigg.

10. Allemand, as well as other persons, including other landowners, loggers and former landowners, have continuously used said road without the permission of Trigg; said use has been for traveling to and from timber areas and former and present homestead areas and such use has been in an open, uninterrupted, peaceable, notorious and adverse manner under claim of right for a period in excess of ten years with the knowledge or imputed knowledge of Trigg.

11. Pursuant to the agreement between Wallace and Allemand, Wallace undertook to locate and set up his lumber mill operation on lands belonging to Allemand at a cost to Wallace in excess of $25,000, and such locating and setting up of the lumber mill operation was with the full knowledge of Trigg, who did nothing to stop said operation and, in fact, Trigg was then discussing possible logging arrangements with Wallace.

12. Wallace, in order to conduct the lumber mill operation and harvesting of timber had to repair portions of the roadway and the same was necessary and proper and resulted in no harm or damage to the existing road; the road as it presently exists is improved and of substantial benefit to persons using said road for any purpose, including Plaintiffs.

\* \* \* \* \* \*

14. The court has visually inspected said roads and lumber mill operations and visual inspection does not reveal any appreciable damage to the roads or any possibility of danger or fire hazard because of location of the lumber mill, and the continuing repairs required for the use of said roads prevents erosion and is beneficial to the lands served by said roads, including Plaintiff's lands.

15. Allemand, at some time during the setting up of the lumber mill, opened a long–standing division fence between the lands of Trigg and Allemand, but said opening was necessary for the lumber mill operation and did not result in any damage to the division fence in that said opening was closed and replaced with a strong and sturdy fence gate; said opening was necessary to give Allemand access to the road ... in that said road runs in a parallel line with said fence.

\* \* \* \* \* \*

21. The evidence presented concerning uses made of Trigg's real estate in times past for access to former landowners and loggers in the vicinity of the real estate belonging to Trigg establishes that the present roadway * * * has existed for a period long in excess of ten years last past the date of the filing of this lawsuit and alleged acts of trespass, and was so in existence and use at the time Trigg purchased his said land, and he did so purchase it knowing of said use.

22. Any rights of access which may have been extinguished by that cause entitled *Green v. Adrian F. Allemand, et al.*, being Cause No. 15,167 in the District Court, Fourth Judicial District, State of New Mexico, County of San Miguel, in which a Final Decree was entered in 1954

is not enforceable in this proceeding in that use of the road * * * has existed for a period in excess of ten years since and after entry of said Final Decree in 1954, and Trigg and his predecessors in interest failed to assert said Final Degree during any time prior to the filing of this lawsuit and Allemand has held prescriptive use of said road for a period long in excess of ten years next preceding the filing of this lawsuit.

\* \* \* \* \* \*

24. Trigg ujlawfully [sic] placed barricades and locks upon the gates located on said road and has acted maliciously and in wanton disregard for Allemand's and Wallace's rights to engage in a legitimate private enterprise of harvesting timber upon lands belonging to Allemands and, therefore, Allemand and Wallace are entitled to an injunction permanently enjoining Trigg from in any way or manner interfering with or depriving Allemand and Wallace use and access to said road.

## CONCLUSIONS OF LAW

\* \* \* \* \* \*

4. Defendant Allemand has established a private easement by prescription over the lands of Plaintiff for the use of Defendant and other landowners in the vicinity of Plaintiffs' and Defendant Allemand's lands, and his use thereof has not damaged Plaintiff in any way, but has been of benefit to him to the extent the roads are maintained and improved.

\* \* \* \* \* \*

A. *A public easement by prescription was established across Trigg's land.*

Trigg claims that there is no substantial evidence to support the findings and conclusions that Allemand had established a prescriptive easement across Trigg's land.

Allemand established that the road referred to as "Sulsbacher" and "Ciddio Hill" is a public road. The road became public from the years 1916, 1920 and 1925. The history of this road was told by elderly men who had lived in this area most of their lives. It began in the horse and wagon days when the railroad was built that ran along what became U.S. Highway 84 for several miles. Logging operations took place from that time. In those days 50 families lived on the mesa and freely used the road for many purposes. All of the witnesses testified that this was a public road, freely used by the public. There was free travel over this road for half a century before Trigg acquired his property in 1964.

Allemand testified that the road had been open to the public for 55 years and was the only road used. During his lifetime, he used the road to feed cattle and haul wood, posts, rock, cows and trailers. He continued to use the road after Trigg acquired the property. No one ever attempted to prevent him or anyone else from using the road. Two witnesses testified as to logging operations, one in the year 1951 and the other in 1972. One witness testified that there were logging operations as long as he could remember beginning with the time the railroad was built. Although this was not a county road, the county maintained and graded the road at least once in the years 1956 and 1966. Furthermore, during a dispute between Wallace and Trigg, Wallace asked the following question to which Trigg made the following response:

Q. Well, Mr. Trigg, are you telling me that this is not a public road?

A. No. I'm not telling you that this is not a public road because I think it is.

He repeated this three times and it was heard by others present.

█ A public highway can be established by use alone. *Lovelace v. Hightower*, 50 N.M. 50, 168 P.2d 864 (1946); *Dutton v. Slayton*, 92 N.M. 668, 593 P.2d 1071 (1979).

█ No direct testimony appears that use of the road by the witnesses or the public was adverse under claim of right. "It is not essential that there be positive evidence that the use of the road by the public was under a claim of right. Such continuous use for twenty years or more, unexplained, will be presumed to be under a claim of right, and therefore adverse."

*Cozy Home Realty Co. v. Ralston*, 214 Ind. 149, 14 N.E.2d 917 (1938). "[F]requency of use or number of users is unimportant, it being enough if use of the road in question was free and common to all who had occasion to use it as a public highway." *Discher v. Klapp*, 124 Ind.App. 563, 117 N.E.2d 753, 757 (1954). Once a road is found to be open to the public and free and common to all citizens, they should be open for all uses reasonably foreseeable. *Westlake v. Duncan, Dieckman & Duncan Mining Co.*, 228 Ark. 336, 307 S.W.2d 220 (1957).

In *Sanchez v. Dale Bellamah Homes of New Mexico, Inc.*, 76 N.M. 526, 529, 417 P.2d 25 (1966) the court said:

The great weight of the decisions hold that proof of an open, notorious * * * user for the prescriptive period, without evidence of how it began, raises a presumption that the use was adverse and under a claim of right.

In addition to the presumption that the use was adverse and under a claim of right, *Trambley v. Luterman*, 6 N.M. 15, 24, 27 P. 312 (1891) quoted the following:

"There need be no claim of right in words, or an admission by the owners of the land in words, that he knew of the adverse cause and claim of right. Twenty–one years of adverse use continually and uninterruptedly, with the knowledge and acquiescence of the owner of the land, in the absence of any evidence of permission or license, is sufficient proof of the existence of such easement."

What is exemplified by the language of the courts is the protection afforded adjoining land owners in the establishment of a public easement by prescription when one landowner sits idly by for ten or more years and grants persons free use of a roadway over his land.

The trial court found that "Allemand, *as well as other persons* * * * have continuously used said road without the permission of Trigg * * * and such use has been in an * * * adverse manner under a claim of right in excess of ten years with the knowledge or imputed knowledge of Trigg." We read this language to mean that the road in

question was a "public road" which every person had a right to use.

■ The finding of the trial court which support the prescriptive easement in favor of the public are supported by substantial evidence.

■ We take a different view, however, of the trial court's conclusion of law that defendant Allemand has established a *private* easement by prescription over plaintiffs' lands. The trial court's conclusions of law are not binding upon us; we may draw our own legal conclusions. *State ex rel. Apodaca v. New Mexico State Bd. of Ed.*, 82 N.M. 558, 484 P.2d 1268 (1971); *Martinez v. Martinez*, 93 N.M. 673, 604 P.2d 366 (1979).

Trigg relies on *Martinez v. Mundy*, 61 N.M. 87, 295 P.2d 209 (1956). This was an ejectment action wherein defendants counterclaimed to quiet title. The Supreme Court held that the evidence would sustain a finding that defendants had obtained rights by adverse possession and that plaintiffs had not acquired by prescription any rights to pasture and livestock, cut wood or use roads on and over property. In the course of its opinion the court said:

The claim being in common with and similar to that of the general public in this area, the appellants certainly could not acquire a *private easement* unto themselves. [Emphasis added.] [Id. 95, 295 P.2d 209.]

■ *Martinez* was affirmed in *Garmond v. Kinney*, 91 N.M. 646, 579 P.2d 178 (1978). *Martinez* and *Garmond* are limited to those cases wherein a party seeks a "private easement" on a way, not a "public easement." Where a private easement is acquired, the general public cannot freely use the area involved. The difference between a "public" and "private" easement is adequately explained in *Kripp v. Curtis*, 71 Cal. 62, 11 P. 879 (1886). Omitting all citations the court said:

The privilege which one person, or particular description of persons, may have of passing over the land of another in some particular line is termed a *right of way*. It is an incorporeal hereditament,

an easement which does not necessarily divest the owner of the fee of the land, and, for all other purposes except the servitude or use as a way, he owns it, and may have his action for an injury to his residuary interest as fully as he would be entitled to were it all his own. A right of way may be public or private. Public ways, as applied to ways by land, are usually termed "highways" or "public roads," and are such ways as every citizen has a right to use. A private way relates to that class of easements in which a particular person, or particular description or class of persons, have an interest or right, as distinguished from the general public * * *. [Emphasis by court.]

■ We hold that the use made of Trigg's land was not a permissive use. It was a prescriptive easement, a "public road" which Allemand and Wallace had the right to use.

B. *A prescriptive easement has not been created against the State.*

■ Trigg also claims that a prescriptive easement cannot be created against the State. By virtue of a lease, Trigg was in possession of land owned by the State, land crossed over by Wallace. However, the land leased by Trigg was not held by the State for public use. *Burgett v. Calentine*, 56 N.M. 194, 242 P.2d 276 (1951), relied on by Trigg, holds that an easement cannot be acquired against the State by adverse possession. "Adverse possession" relates to the acquisition of title, and cannot apply to easements. *Hester v. Sawyers*, 41 N.M. 497, 71 P.2d 646 (1937).

■ *Burgett* stands for the proposition that no easement can be acquired in property of the State *held for a public use*; at least there can be no such right of user by an individual as will interfere with public rights in the property. *Cracchiolo v. State*, 6 Ariz.App. 597, 435 P.2d 726 (1967) in which *Burgett* is cited as authority. If the land is used for the common good of all, that is for public use, the public is not to lose its right through the negligence of its agents, nor because it did not chose to resist

an encroachment by one of its own members, whose duty it was, as much as any other citizen, to protect the State in its right. *Kempner v. Aetna Hose, Hook & Ladder Co.*, 394 A.2d 238 (Del.Ch.1978).

■ This issue was laid to rest in *Wilson v. Williams*, 43 N.M. 173, 87 P.2d 683 (1939). Wilson and others sought to restrain Williams from obstructing a certain road. The question involved was whether the road was in fact a public road. The land over which the alleged road in question was established and maintained was public land. Williams came into possession of the land by homestead in 1931. The road was in continuous use for a period of 34 years prior to the time of the suit. Everybody recognized and used it as a public road of the community. The court held that the establishment of a highway by public user was sufficient to constitute dedication. The settler upon public lands upon which there is a road in common and general use as a highway, takes subject to the public easement of a right of way on the road.

■ In the instant case, Trigg was subject to the public easement of a right of way on the road in question. The prescriptive easement was not created against the State. It was created in favor of the public for public user.

C. *Res judicata is not a bar to the case at issue.*

Trigg further claims that any access for Allemand existing across Trigg's land was extinguished in San Miguel County Cause No. 15,167 and said cause is res judicata as to Allemand and Wallace.

On July 28, 1954, the Greens, Trigg's predecessor in title, obtained a quiet title decree against Allemand and others to various sections of land. Allemand was "barred and forever estopped from having or claiming *any lien upon any right or title to said real estate* or any part thereof adverse to the estate of plaintiffs." [Emphasis added.] Allemand does not claim "any lien upon or any right or title to the real estate or any part thereof."

■ We agree with the trial court's finding No. 22 that any rights of access that might have been extinguished by that case is not enforceable in that the use of the road has existed for a period in excess of ten years after 1954; that this decree had not been asserted. But what is also determinative of the irrelevance of the quiet title suit is the fact that the prescriptive easement in the public road, in which an easement right of way was granted to the public, was not included.

This point is without merit.

We have reviewed the other points raised and find that they do not affect the public easement right of way and are otherwise irrelevant.

D. *The trial court erred in Allemand–Wallace cross–appeal.*

The trial court concluded and entered judgment:

6. That neither party is entitled to damages and that each party is to defray his expenses herein.

Defendants Allemand and Wallace cross–appealed.

The trial court found:

6. Prior to September, 1978, Wallace contacted Allemand and Trigg, individually, about logging portions of said lands and, thereafter, Wallace entered into a timber sales contract with Allemand, said contract to be effective from August, 1978, to August, 1983.

\* \* \* \* \* \*

11. Pursuant to the agreement between Wallace and Allemand, Wallace undertook to locate and set up his lumber mill operation on lands belonging to Allemand at a cost to Wallace in excess of $25,000, and such locating and setting up of the lumber mill operation was with the full knowledge of Trigg, who did nothing to stop said operation and, in fact, Trigg was then discussing possible logging arrangements with Wallace.

\* \* \* \* \* \*

18. Wallace does not operate his lumber and mill operation during bad weather or when said road is excessively wet; during normal operations said road is traveled on the average of ten times per week by a truck transporting cut timber.

\* \* \* \* \* \*

24. Trigg ujlawfully [sic] placed barricades and locks upon the gates located on said road and has acted maliciously and in wanton disregard for Allemand's and Wallace's rights to engage in a legitimate private enterprise of harvesting timber upon lands belonging to Allemands and, therefore, Allemand and Wallace are entitled to an injunction permanently enjoining Trigg from in any way or manner interfering with or depriving Allemand and Wallace use and access to said road.

The trial court made no findings one way or another on the issue of damages. Allemand and Wallace requested the court to find that Trigg caused the Wallace operation to shut down for about six weeks to his loss of profits of $24,000.00, 25% of which inured to Allemand's benefit, and a further sum of $500.00 per day until Trigg allows the operation without interference; that Wallace was obligated to pay the work crew $6,000.00 for the six–week period that the operation was shut down.

■ These requested findings were denied. "The denial of the requested finding amounts to a contrary finding." *DeVilliers v. Balcomb,* 79 N.M. 572, 574, 446 P.2d 220 (1968). On the other hand, where a party requested a finding that damages were suffered at the rate of $10.00 per day, and the finding was refused, the Supreme Court in *Aguayo v. Village of Chama,* 79 N.M. 729, 732, 449 P.2d 331 (1969) said:

\* \* \* The court failed to find either way on these issues. The trial court must, when requested, find one way or the other upon a material fact issue, and·failure to do so constitutes error.

This rule is derived from Rule 52(B) of the Rules of Civil Procedure and is mandatory. *Curbello v. Vaughn,* 78 N.M. 489, 432 P.2d 845 (1967). It is bolstered by the rule that a conclusion of law must find support

in the findings of fact. *House of Carpets, Inc. v. Mortgage Investment Co.,* 85 N.M. 560, 514 P.2d 611 (1973).

The denial of a requested finding cannot amount to a contrary finding where the court fails to find one way or another upon a material fact issue. We prefer to follow the *Aguayo* rule.

 Damage is a material issue in this case. It is the duty of the trial court to review the evidence and make a finding one way or another whether there is substantial evidence to support the requested finding of Allemand and Wallace that each of these parties suffered any damage. This finding cannot rest on mere speculation or conjecture. *Petrakis v. Krasnow,* 54 N.M. 39, 213 P.2d 220 (1949). If the finding of the court is in the negative, it is the finding of an ultimate fact. If the finding is in the affirmative, the court shall fix the amount of damages suffered. "The computation of the amount of damages with mathematical certainty is not required." *Nosker v. Western Farm Bureau Mutual Ins. Co.,* 81 N.M. 300, 302, 466 P.2d 866 (1970). Mere uncertainty as to amount does not deny the right of recovery. *Pendergrass v. Lovelace,* 57 N.M. 661, 262 P.2d 231 (1953).

 Defendants requested and the court found that Trigg acted maliciously in wanton disregard of defendants' rights to engage in a legitimate business enterprise. Defendants requested an award of punitive damages which the court denied. To receive an award of punitive damages plaintiff must suffer actual damages. *Christman v. Voyer,* 92 N.M. 772, 595 P.2d 410 (Ct.App.1979). The finding of the trial court falls within the definition of an award for punitive damages. *Samedan Oil Corp. v. Neeld,* 91 N.M. 599, 577 P.2d 1245 (1978); *Christman, supra.* If punitive damages are awarded, the amount thereof must be left to the fact finder's discretion based upon the circumstances of this case, but must not be so unrelated to the injury and actual damages proven as to plainly manifest passion and prejudice rather than justice and reason. *Christman, supra.*

The trial court also concluded "that each party is to defray his expenses herein." Allemand and Wallace did not attack this conclusion in this appeal. They limited their argument only as to the issue of damages suffered. This portion of the judgment is affirmed.

We affirm the result reached by the trial court as to Allemand and Wallace and reverse as to their cross–appeal. This appeal is remanded to the district court to determine from the transcript of proceedings whether Allemand and Wallace did or did not suffer actual damages, whether punitive damages should be awarded, to make findings thereon, and enter judgment.

IT IS SO ORDERED.

LOPEZ and WALTERS, JJ., concur.