# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2021-NMCA-057

Filing Date: July 14, 2021

No. A-1-CA-37468

MCFARLAND LAND AND CATTLE INC.,

      Plaintiff-Appellant,

v.

CAPROCK SOLAR 1, LLC, a Delaware
limited liability company, and SWINERTON
BUILDERS, a California corporation,

      Defendants-Appellees,

and

COUNTY OF QUAY,

      Intervenor-Appellee.

**APPEAL FROM THE DISTRICT COURT OF QUAY COUNTY**
**Matthew E. Chandler, District Judge**

Certiorari Granted, September 24, 2021, No. S-1-SC-38934. Released for Publication November 9, 2021.

Schutte Law Office, LLC
Donald C. Schutte
Tucumcari, NM

for Appellant

Moses, Dunn, Farmer & Tuthill, P.C.
Joseph L. Werntz
Albuquerque, NM

for Appellees

Warren F. Frost, P.C.
Warren F. Frost
Logan, NM

for Intervenor-Appellee

## OPINION

**DUFFY, Judge.**

**{1}** Plaintiff McFarland Land and Cattle Inc. appeals from a final judgment in which the district court concluded that Quay County and Defendant Caprock Solar 1, LLC, had established the existence of a public prescriptive easement where Quay Road AI (QR AI) crosses over Plaintiff's property. Plaintiff contends that the elements necessary to establish such an easement were not proved by clear and convincing evidence at trial. We agree and reverse.

## BACKGROUND

**{2}** QR AI begins at State Road 278 and runs south along a section line that divides sections of land in Quay County. At issue in this appeal is the portion of that road that runs along the eastern border of Plaintiff's property. QR AI originally crossed an arroyo near the southeast corner of Plaintiff's property via a wooden bridge, but sometime in 1954, the bridge washed out. Afterward, the road was rerouted about one hundred feet west onto Plaintiff's land. This "jog" is now referred to as the "low water crossing."

**{3}** In 2016, Plaintiff's neighbors to the south allowed Caprock to construct a solar array on their property. Caprock also entered into a sublease with the County to finance the project. To access the solar array, Caprock and its general contractor, Swinerton Builders (collectively, Defendants), had to travel south on QR AI, through the low water crossing. According to Plaintiff, Defendants' use of the low water crossing was initially permissive, though Plaintiff requested compensation for their continued use of the road. Specifically, Plaintiff sought an initial payment of $20,000 followed by annual payments of $15,000 for the next twenty-five years. When the County learned Plaintiff was attempting to charge Caprock for use of the road, the County sent a cease and desist letter to Plaintiff stating that Plaintiff had no right to charge for the use of a county road.

**{4}** Plaintiff filed a petition for a permanent injunction to stop Defendants from using the low water crossing. Plaintiff claimed the low water crossing was private property and Defendants did not have permission to use it. Defendants answered and asserted as affirmative defenses that Plaintiff's claims were barred by virtue of an implied easement, prescriptive easement, or an easement by necessity. The County intervened and filed a complaint for declaratory judgment, arguing that the public, including Defendants, had the right to use QR AI because it was a county road. The County asked the district court to declare that QR AI and the low water crossing are within a public prescriptive easement. Caprock and the County filed a joint trial brief stating that they were relying primarily on three legal theories to establish a right of access: (1) prescription, (2) implied dedication, and (3) easement by estoppel.

**{5}**     Following a bench trial, the district court entered judgment in favor of Defendants and the County, declaring that the County and Caprock "have proven the elements of a public prescriptive easement on QR AI, where it crosses [Plaintiff's property] by clear and convincing evidence." The district court did not make any findings or conclusions of law on the other theories brought forth by Defendants and the County. Plaintiff appeals.

## DISCUSSION

**{6}**     Plaintiff argues that the district court's conclusion that a public prescriptive easement had been established was not supported by the evidence. Plaintiff maintains that Defendants presented no evidence that the general public used the roadway.

**{7}**     "On appeal, we decide whether substantial evidence supports the district court's findings and whether these findings support the conclusions that the elements required to establish a public easement by prescription were . . . proved by clear and convincing evidence." *Algermissen v. Sutin*, 2003-NMSC-001, ¶ 9, 133 N.M. 50, 61 P.3d 176; *see Scholes v. Post Office Canyon Ranch, Inc.*, 1992-NMCA-078, ¶ 4, 115 N.M. 410, 852 P.2d 683 (explaining that "we review the challenge to a court's determination that a prescriptive easement exists by determining whether each element required to establish a prescriptive easement has been proven by clear and convincing evidence" (internal quotation marks and citation omitted)). "For evidence to be clear and convincing, it must instantly tilt the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with the abiding conviction that the evidence is true." *Brannock v. Lotus Fund*, 2016-NMCA-030, ¶ 25, 367 P.3d 888 (internal quotation marks and citation omitted).

**{8}**     Defendants bore the burden to establish that "an easement by prescription [was] created by an adverse use of land, that is open or notorious, and continued without effective interruption for the prescriptive period (of ten years)." *Algermissen*, 2003-NMSC-001, ¶ 10. For a *public* easement by prescription, Defendants were required to show "usage by the general public [that] continued for the length of time necessary to create a right of prescription if the use had been by an individual." *Luevano v. Maestas*, 1994-NMCA-051, ¶ 17, 117 N.M. 580, 874 P.2d 788 (internal quotation marks and citation omitted); *see Herbertson v. Iliff*, 1989-NMCA-027, ¶ 19, 108 N.M. 552, 775 P.2d 754 (upholding the district court's finding that the disputed parcel had not been used in such a manner to establish a public road by adverse user because there was " 'no history of general public use' of the disputed parcel"). In other words, Defendants must have "prove[d] use by the public in general, as opposed to use by particular individuals, as in private prescriptive easements, or even use by a limited segment of the public." 2 Am. Jur. 3d *Proof of Facts* 197 § 4 (2021). " 'Public' use is the sine qua non of public prescriptive easements." 2 Am. Jur. 3d *Proof of Facts* 197 § 2.

**{9}**     Although the question of whether the general public used the road is at the heart of this case, the district court made no specific findings on the topic. The court's findings, instead, centered on the fact that Plaintiff's neighbors and their invitees used the road, and that the County considers QR AI a public road and has expended funds to

maintain and repair the road. The court found that the County has listed QR AI as a county road on annual road certifications and on county road system maps dating back to 1956.[1] The court also found that the County used public funds to blade QR AI and made repairs when requested by property owners who use QR AI for access.

**{10}** Defendants and the County maintain that this evidence was sufficient to establish a public prescriptive easement, noting that this Court has previously stated that the "[f]requency of use or number of users is unimportant, it being enough if use of the road in question was free and common to all who had occasion to use it as a public highway." *Trigg v. Allemand*, 1980-NMCA-151, ¶ 9, 95 N.M. 128, 619 P.2d 573 (internal quotation marks and citation omitted); *Luevano*, 1994-NMCA-051, ¶ 25 (same). This Court has made clear, however, that use by neighboring property owners and their invitees is not sufficient to establish public use of the road. *Luevano*, 1994-NMCA-051, ¶ 21; *see also Herbertson*, 1989-NMCA-027, ¶ 19 (explaining that the court does "not view use of the disputed parcel by tenants and their guests and invitees as sufficient to establish public use of the parcel"). Similarly, although this Court has indicated that evidence of the road's reputation as a public road may support an inference of public use, *Luevano*, 1994-NMCA-051, ¶¶ 22-26, neither our Supreme Court nor this Court has ever held that such evidence is sufficient to establish a public prescriptive easement in the absence of other evidence of public use.

**{11}** Rather, our Supreme Court has made clear that the party seeking the easement must present clear and convincing evidence that the general public used the land. *Algermissen*, 2003-NMSC-001, ¶¶ 9-10; *see* 2 Am. Jur. 3d *Proof of Facts* 197 § 4 ("The fact that a parcel of land or a roadway is listed in government records as public land or a public road, by itself, has been held to not warrant a finding of public use or control; proof of actual adverse use by the public for the prescriptive period is still necessary for a finding of public prescriptive rights."). Indeed, even though both *Luevano* and *Trigg* considered the character of the road, both cases also considered evidence of actual use by the public. In *Trigg*, "[a]ll of the witnesses testified that this was a public road, freely used by the public . . . for half a century before [the plaintiff] acquired his property in 1964." 1980-NMCA-151, ¶ 6. And in *Luevano*, this Court concluded that even though the road at issue had a reputation as open to the public, "that reputation might have arisen at least in part as a result of [the p]laintiffs' business and the use made by their invitees[,]" in which case, evidence of public use was lacking. 1994-NMCA-051, ¶ 26.

**{12}** In this case, although Defendants presented some evidence that QR AI has a reputation as a public road, the testimony did not establish use of QR AI by the general public. Plaintiff's ranch manager, Ted Quintana, testified that at the time of trial, he had been working for Plaintiff for sixteen years, during which he helped take care of the

---

[1]The County does not claim that it established QR AI as a county road through statutory procedures. *See* NMSA 1978, § 67-4-12 (2003) (setting out procedure for county designation of rights of way). Rather, it argues that our Supreme Court has recognized that in New Mexico a public road can be established by a prescriptive easement. *See Vill. of Capitan v. Kaywood*, 1981-NMSC-082, ¶ 5, 96 N.M. 524, 632 P.2d 1162. Thus, the County's sole argument on appeal is that it established QR AI as a public road by prescription.

cattle in the pasture. He stated that he worked near the low water crossing on QR AI approximately two to three times every week. Throughout his time working on the ranch, he testified that he never saw strangers on the property; the only people he saw were neighbors who owned the adjoining land. He further stated that he never saw anyone crossing Plaintiff's land for any recreational purpose.

{13}    Plaintiff's president, Kelly McFarland, testified that in his many decades living and working on the property he did not see anyone "willy-nilly" crossing his land. The only people McFarland testified to seeing on the property were his neighbors and, on a few occasions, their contractors. He further explained that his neighbors keep watch on the land and have been known to stop both him and his wife when they did not recognize their cars because they wanted to know who was in the area and for what purpose. When asked if his neighbors considered the property to be public, Plaintiff answered, "Absolutely not, they didn't want any strangers out there on that land."

{14}    Dean Hodges has operated the cattle ranch on Plaintiff's neighbor's property since approximately 1991. During cross-examination, Plaintiff's counsel asked Mr. Hodges about use of QR AI by the general public and the following exchange took place:

Q:      How often do you see people just driving up and down the road who don't belong there?

A:      Not very often. I have seen them, but not very often.

Q:      In the last thirty years, would you have seen people ten times? Five times?

A:      Probably. Yes, they go deer hunting out there.

Q:      If you see deer hunters out there, do you check on them? If there is someone on your property, do you go find out why they're there?

A:      Most everybody I've had dealings with have called and got permission.

Q:      Oh okay, so the people that come out on your land call you first to get permission.

A:      Right.

Q:      Now if I was just a sightseer, I'm a guest here in Tucumcari and I go down road [QR] AI, how would I know that there is a key to the lock?

A:      You wouldn't.

Q:     Well how would I, as a member of the public, get on down the road?

A:     You'd have to get access to the lock.

Q:     I'd have to get permission from somebody down there?

A:     Right.

**{15}**   In addition to Plaintiff's neighbors' testimony, two County employees also testified about their observations of the general public using QR AI. The County Road Superintendent, Harry Heckendorn, testified about how he maintained county roads, including QR AI. He described QR AI as being "low traffic" because the only people who would go down the road were those who lived at the south end—that is, Plaintiff's neighbors. He testified that based on his own personal observations, no one was using the road for sight-seeing purposes; only those who had business along QR AI would use it. In addition to Mr. Heckendorn, Tony Gresham, who also worked for the County, testified about his work blading roads in Quay County, including QR AI. In his approximately ten years of blading QR AI, he stated that he never saw anyone using the road who he did not know.

**{16}**   From the testimony elicited at trial, public use of QR AI might have amounted to five to ten times over an approximate thirty-year period. There was no other evidence of actual use of the road by the general public, particularly within a prescriptive period. *Cf. Jicarilla Apache Tribe v. Bd. of Cnty. Comm'rs*, 1993-NMCA-094, ¶¶ 37-38, 116 N.M. 320, 862 P.2d 428 (holding that evidence supported the claim that the road in question was public because testimony showed the road had been used for recreational purposes, to drive cattle, sheep, and horses, and for use by the public when necessary or convenient since time immemorial), *rev'd on other grounds by* 1994-NMSC-104, ¶ 24, 118 N.M. 550, 883 P.2d 136. In fact, most of the witnesses who testified explained that the people they did see were other ranchers, neighbors, or their invitees. This use by neighbors and their invitees does not constitute use by the general public. *Luevano*, 1994-NMCA-051, ¶¶ 20-21; *Herbertson*, 1989-NMCA-027, ¶ 19. Consequently, we conclude that Defendants did not meet their burden to establish by clear and convincing evidence that the general public used QR AI, and thus, have not established the requirements for a public prescriptive easement. *See Algermissen*, 2003-NMSC-001, ¶ 9 (stating that if any one of the elements necessary for the creation of a public prescriptive easement is lacking, then we must hold that the party seeking the easement failed in their claim). We therefore reverse the district court's final judgment.

**CONCLUSION**

**{17}**   For the foregoing reasons, we reverse the district court's final judgment that Defendants and the County established a public prescriptive easement and remand for further consideration of the remaining theories raised by Defendants and the County but not ruled upon by the district court following trial.

**{18}** IT IS SO ORDERED.

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**ZACHARY A. IVES, Judge**