The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: July 13, 2023

**NO. S-1-SC-38934**

**MCFARLAND LAND AND CATTLE INC.,**

Plaintiff-Respondent,

v.

**CAPROCK SOLAR 1, LLC, a Delaware limited liability company, and SWINERTON BUILDERS, a California corporation,**

Defendants,

and

**COUNTY OF QUAY,**

Intervenor-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Matthew E. Chandler, District Judge**

Warren F. Frost, P.C.
Warren F. Frost
Logan, NM

for Petitioner

Hinkle Shanor LLP
Richard E. Olson

Jeremy D. Angenend
Roswell, NM

for Respondent


Moses, Dunn, Farmer & Tuthill, P.C.
Joseph Lee Werntz
Albuquerque, NM

for Defendants

**OPINION**

**THOMSON, Justice.**

{1}    This case involves a dispute about whether a public prescriptive easement existed over a road in Quay County. Defendants Caprock Solar 1 (Caprock) and Swinerton Builders (collectively, Defendants) and Intervenor Quay County (the County) contend that the Court of Appeals erred by reversing the district court and creating an additional requirement to establish a public prescriptive easement claim—namely, that a claimant must prove frequency of use by the public and a minimum number of public users. We agree that the Court of Appeals' stricter proof requirement was improper and take this opportunity to clarify what is required to prove a public prescriptive easement claim. In doing so, we adopt the holding in *Trigg v. Allemand*, 1980-NMCA-151, ¶ 9, 95 N.M. 128, 619 P.2d 573, that "[f]requency of use or number of users is unimportant, it being enough if use of the road in question was free and common to all who had occasion to use it as a public highway" (internal quotation marks and citation omitted). We also adopt the principle articulated in *Luevano v. Maestas*, 1994-NMCA-051, ¶¶ 23, 25, 117 N.M. 580, 874 P.2d 788, that the public character of the road is key to establishing a public prescriptive easement claim. In this case, there is substantial evidence to support the

district court's finding of a public prescriptive easement over the disputed road. Therefore, we reverse the Court of Appeals and affirm the district court.

## I.    BACKGROUND

{2}    Quay Road AI (QR AI) begins on State Road 278 and runs south along tracts owned by Robert and Billie Abercrombie (the Abercrombies) and Plaintiff McFarland Land & Cattle Inc. (McFarland), eventually reaching state-owned land. Sometime in 1954, a flood washed out a wooden bridge on QR AI that crossed an arroyo near the southeast corner of McFarland's property. After the flood, QR AI was rerouted one hundred feet west onto McFarland's property. This area became known as the "low water crossing." The low water crossing, which is located on McFarland's property, is the subject of this dispute.

{3}    In 2015, Caprock entered into a lease with the Abercrombies for the construction and operation of a solar energy farm on the Abercrombies' property. Caprock hired Swinerton Builders as its general contractor and entered into a sublease with the County in order to acquire industrial revenue bonds to assist in financing the solar farm. QR AI, including the low water crossing, is the only means of vehicular access to lands owned by the Abercrombies that were leased to Caprock, state lease land, and lands owned by the Dean Hodges family. Consequently,

2

Caprock and Swinerton Builders used the low water crossing on QR AI to reach the leased land on the Abercrombies' property for construction of the solar farm.

{4}     When construction of the solar farm began, McFarland demanded that certain conditions be met, including payment from Caprock, to use the crossing. Up to that point, McFarland made no effort to keep others from using QR AI. Negotiations between McFarland and Caprock regarding use of the crossing failed, driving McFarland to file a petition for a permanent injunction seeking to enjoin Defendants from using the low water crossing. In their answer, Defendants asserted, among others, the affirmative defenses of implied easement, prescriptive easement, and easement by necessity. The district court allowed the County to intervene, and the County filed a complaint seeking a declaration that QR AI's low water crossing is within a public prescriptive easement and that McFarland had no right to interfere with the public's use of QR AI and the low water crossing. Prior to trial, Defendants and the County filed a joint trial brief, contending that "a right of access exists across QR AI, including 'the low water crossing'[] where it crosses the McFarland land," under the theories of easement by prescription, implied dedication, and easement by estoppel.

{5}     After a bench trial, the district court entered judgment in favor of Defendants and the County. The district court did not make any findings or conclusions on the

implied dedication or easement by estoppel theories. Instead, it focused its findings on the existence of a public prescriptive easement, concluding that Defendants and the County "prove[d] the elements of a public prescriptive easement on QR AI, where it crosses [McFarland's property] by clear and convincing evidence."

{6}    The conclusion that a public prescriptive easement existed over QR AI was based on evidence of records, certifications, and maps showing QR AI as a County road. The district court made additional findings regarding QR AI's reputation as a public road. It found that McFarland's neighbors used QR AI and never felt the need to ask for permission to use it, that McFarland never prevented others from using QR AI, and that the local title company that issued the title insurance policy for the solar farm identified QR AI as a public road.

{7}    The Court of Appeals reversed the district court, concluding that the County and Defendants did not prove the public use element of their public prescriptive easement claim by clear and convincing evidence. *McFarland Land & Cattle Inc. v. Caprock Solar 1, LLC*, 2021-NMCA-057, ¶ 16, 497 P.3d 665. Acknowledging its holding in *Trigg* that "'[f]requency of use or number of users is unimportant, it being enough if use of the road in question was free and common to all who had occasion to use it as a public highway,'" the Court of Appeals, in its substantial evidence review, nonetheless concluded that public use of the road "might have amounted to

4

five to ten times over an approximate thirty-year period" and that "[t]here was no other evidence of actual use of the road by the general public." *McFarland Land & Cattle Inc.*, 2021-NMCA-057, ¶¶ 10, 16 (quoting *Trigg*, 1980-NMCA-151, ¶ 9 (first alteration in original)). The Court read *Luevano* to require the district court to disregard evidence of QR AI's reputation as a public road because, in its view, that evidence relied exclusively on the use made by McFarland's neighbors and invitees. *See McFarland Land & Cattle Inc.*, 2021-NMCA-057, ¶¶ 12, 16. The Court of Appeals remanded the case to the district court to consider the unresolved theories of implied dedication and easement by estoppel advanced by the County and Defendants. *Id.* ¶ 17. The County filed a petition for writ of certiorari, which we granted, and Defendants joined the County in the briefing. Our review on appeal is limited to the public prescriptive easement claim as this is the only question presented by the parties. *See* Rule 12-502(C)(2)(b) NMRA ("[T]he Court will consider only the questions set forth in the petition."). We conclude that the Court of Appeals erred in requiring evidence establishing frequency of use or a minimum number of users, given the other evidence presented at trial and findings of the district court that sufficient evidence proved a public prescriptive easement existed for the low water crossing on QR AI. We reverse the Court of Appeals and affirm the district court's original judgment.

## II.	DISCUSSION

### A.	Standard of Review

{8}	We begin by reviewing the Court of Appeals' legal conclusion on prescriptive easements de novo. *Amethyst Land Co., Inc. v. Terhune*, 2014-NMSC-015, ¶ 9, 326 P.3d 12. We then determine "whether substantial evidence supports the district court's findings and whether these findings support the conclusions that the elements required to establish a public easement by prescription were . . . proved by clear and convincing evidence." *Algermissen v. Sutin*, 2003-NMSC-001, ¶ 9, 133 N.M. 50, 61 P.3d 176. Review for substantial evidence is a deferential standard, and

> [e]ven in a case involving issues that must be established by clear and convincing evidence, it is for the finder of fact, and not for reviewing courts, to weigh conflicting evidence and decide where the truth lies. We defer to the trial court, not because it is convenient, but because the trial court is in a better position than we are to make findings of fact and also because that is one of the responsibilities given to trial courts rather than appellate courts.

*State ex. rel. Dep't of Human Servs. v. Williams*, 1989-NMCA-008, ¶ 7, 108 N.M. 332, 772 P.2d 366.

### B.	Frequency of Use or Minimum Number of Users Is Not Required to Establish a Public Prescriptive Easement Claim

{9}	The County and Defendants challenge the Court of Appeals' conclusion that they did not present sufficient evidence to establish a public prescriptive easement. *See McFarland Land & Cattle Inc.*, 2021-NMCA-057, ¶ 16. Specifically, they argue

that if a road has a public character, they need not prove a "minim[um] number of uses by the public," and therefore the Court of Appeals' additional proof requirement is inconsistent with our law on public prescriptive easements.

{10} In order to establish a public prescriptive easement claim, the claiming party must prove that the public used the property and that there was "an adverse use of land, that is open or notorious, and continued without effective interruption for the prescriptive period (of ten years)." *Algermissen*, 2003-NMSC-001, ¶¶ 9, 10. At issue in this case is whether the Court of Appeals erred by holding that a minimum number of users or amount of use by the public is *required* to support a district court's conclusion that a public prescriptive easement exists.

{11} Our analysis starts with a discussion of the public use element of a public prescriptive easement claim. In *Trigg*, the district court concluded that the defendant, a neighboring landowner, established a public prescriptive easement over a road that crossed the plaintiff's land. 1980-NMCA-151, ¶¶ 4-5. The Court of Appeals held that there was substantial evidence to support the district court's conclusion because although the road was not formally listed as a county road, "[a]ll of the witnesses testified that [it] was a public road, freely used by the public" for more than fifty years, the county maintained and graded the road, and on one occasion, the plaintiff landowner told the defendant neighbor that he believed the road was a public road.

*Id.* ¶¶ 6-7, 14. Noting that "[a] public highway can be established by use alone," the *Trigg* Court highlighted that the character of the road is critical, stating, "Frequency of use or number of users is unimportant, it being enough if use of the road in question was free and common to all who had occasion to use it as a public highway." *Id.* ¶¶ 8-9 (internal quotation marks and citation omitted); *see also Koch v. Mraz*, 165 N.E. 343, 346 (Ill. 1929) ("The test whether a strip of ground has become a public highway by user is, not the number of persons actually using it, but the character of the use; that is, whether the public generally had free and unrestricted right to use the road."). The Court also concluded that "[o]nce a road is found to be open to the public and free and common to all citizens, [it] should be open for all uses reasonably foreseeable," thus setting out the boundaries of a public prescriptive easement. *Trigg*, 1980-NMCA-151, ¶ 9.

{12}     The importance of a road's character as public was later clarified in *Luevano*, where the Court of Appeals reviewed a district court's grant of a motion for summary judgment in favor of a public prescriptive easement claim. 1994-NMCA-051, ¶¶ 1, 8-9. "Having determined there were no material issues of fact in dispute," the district court granted the defendants' motion for summary judgment. *Id.* ¶¶ 1, 8. The defendants argued that a road on the plaintiffs' property was a public prescriptive easement, presenting evidence that neighbors used the road, the county maintained

the road, public records showed the road as a public road, and neighbors believed the road was public. *See id.* ¶¶ 8-9, 18-19, 22. The Court of Appeals held that "the evidence of prescription was [not] sufficient to support judgment for [the d]efendants as a matter of law." *Id.* ¶ 24. The Court first explained that, as a matter of law, use by a landowner's business invitees and neighbors is insufficient on its own to establish the public character of a road. *Id.* ¶ 21 ("We agree with [the p]laintiffs that the evidence of use by their business invitees is not sufficient to establish the public character of the road as a matter of law, and thus to support summary judgment."). "That is because their invitees' use was use in effect by them. No adverse public use resulted when the public utilized an access drive to reach a specific business adjacent to it." *Id.* (text only)[1] (citation omitted). However, the Court of Appeals later explained that there was additional evidence that the road had a reputation as public. *Id.* ¶ 21 ("[T]here is more here than use by [the p]laintiffs' invitees and by [the d]efendant neighbors."). The *Luevano* Court focused on evidence that the road was shown as a public road in public records and testimony from neighbors that they and their predecessors in interest believed the road was a

---

[1]The "text only" parenthetical as used in this opinion indicates the omission—for enhanced readability—of all of the following nontextual marks that may be present in the source text: brackets, ellipses, and internal quotation marks.

public road and that the road was referred to as a public road when they purchased their properties. *Id.* ¶¶ 22-23. Notably, the Court held that evidence of a road's reputation as public supports an inference that the road is "'open to the public'" and clarified that "*Trigg* emphasizes character rather than amount of use." *Id.* ¶¶ 23, 25-26 (citation omitted). Explaining that "[u]nder *Trigg*, the evidence of the road's reputation certainly would support an inference of public use," the Court ultimately concluded that there was a triable issue as to whether evidence of the road's reputation as public "might have arisen at least in part as a result of [the p]laintiffs' business and the use made by their invitees." *Id.* ¶¶ 24-26.

{13}     Thus, *Trigg* and *Luevano* make clear that a claimant does not need to prove frequency of use or a minimum number of users to establish public use. Although public use can be proven with evidence of actual use by the public, ultimately, a claimant must prove that the road has a character or reputation as public that does not arise as a result of use by the landowner's business and invitees.

{14}     In this case, the Court of Appeals acknowledged that there was evidence to support QR AI's reputation as public, such as the County considering QR AI as a public road for decades and the County expending funds on maintaining QR AI. *McFarland Land & Cattle Inc.*, 2021-NMCA-057, ¶ 9. However, the Court of Appeals disregarded this reputation evidence because the County and Defendants

10

did not additionally show a sufficient amount of actual use by the general public. *Id.* ¶¶ 10-12, 16 ("From the testimony elicited at trial, public use of QR AI might have amounted to five to ten times over an approximate thirty-year period. There was no other evidence of actual use of the road by the general public."). Moreover, the Court of Appeals declined to consider the use by McFarland's neighbors and invitees, stating that "use by neighbors and their invitees does not constitute use by the general public." *Id.* ¶ 16 (citing *Luevano*, 1994-NMCA-051, ¶¶ 20-21). As a result, the Court of Appeals concluded that Defendants and the County failed to present clear and convincing evidence of public use of QR AI necessary to establish a public prescriptive easement. *Id.*

{15}    The Court of Appeals' requirement in this case that a claimant prove a minimum number of users or amount of use by the public is in direct conflict with and is unworkable in light of the guidelines provided in *Trigg* and *Luevano*. *See Trigg*, 1980-NMCA-151, ¶ 9 ("Frequency of use or number of users is unimportant, it being enough if use of the road in question was free and common to all who had occasion to use it as a public highway." (text only) (citation omitted)); *Luevano*, 1994-NMCA-051, ¶ 25 ("*Trigg* emphasizes character rather than amount of use."). Furthermore, the Court of Appeals over-read *Luevano* as creating a per se rule that evidence of use by neighbors or invitees cannot ever be considered to establish

11

public use. *See McFarland Land & Cattle Inc.*, 2021-NMCA-057, ¶ 10. However, the Court in *Luevano* explained that neighbor and invitee use cannot, *by itself*, establish the public character of the road as a matter of law. *Luevano*, 1994-NMCA-051, ¶ 21. Rather, a claimant must present additional evidence demonstrating that a road has a public character and that the character did not arise as a result of a landowner's business or use made by the landowner's invitees. *See id.* ¶¶ 21-23, 26.

{16}     We adopt the principles set out in *Trigg* and *Luevano* and hold that when proving a public prescriptive easement claim, one does not need to prove a minimum number of users or frequency of use. Rather, a claimant only needs to prove that "use of the road in question was free and common to all who had occasion to use it as a public highway." *Trigg*, 1980-NMCA-151, ¶ 9 (internal quotation marks and citation omitted). Thus, when proving the public use element, there must be evidence that the road has a public character. *See id.*; *Luevano*, 1994-NMCA-051, ¶ 25. The public character of a road must arise independently from the landowner's business and invitees. *See Luevano*, 1994-NMCA-051, ¶ 26. However, evidence of use by neighbors and their invitees, though not dispositive, can be used to support a road's public character. *See id.* ¶¶ 21-23, 26; *Trigg*, 1980-NMCA-151, ¶¶ 6-7. It does not make sense to conclude that a road with a clear reputation as public is made less so because neighbors use the road or because a claimant does not show a minimum

amount of use by other members of the public. *See Smith v. Bixby*, 242 N.W. 2d 115, 118 (Neb. 1976) ("The defendant cites no authority, nor do we find any, to support the contention that when only a few members of the public use a road regularly, the road may be deemed abandoned. Neither is there any authority to support the proposition that public rights acquired by prescription are lost or abandoned because of a substantial reduction in the number of members of the public who continue to make use of the rights previously acquired."). Neighbors and their invitees are a class of the public, and evidence of their use can be considered along with other evidence of a road's public character.

{17}    Therefore, we conclude that the Court of Appeals erred in requiring the County and Defendants to prove a minimum amount of use by the public in establishing their public prescriptive easement claim and erred in holding that evidence of neighbor or invitee use can never be considered to prove public use.

**C.    Substantial Evidence Supports the District Court's Conclusion of a Public Prescriptive Easement**

{18}    Applying the principles articulated above, we determine that the Court of Appeals' erred in holding that there was not substantial evidence to support the district court's conclusions that the public used QR AI and that a public prescriptive easement existed over it at the low water crossing. *See id.* ¶¶ 16-17.

13

{19}     The County and Defendants presented evidence of QR AI's reputation as public, including evidence that QR AI (1) appears on the 1956 Quay County General Highway Map which the State Highway Department prepared, (2) appears on the 1970 Quay County Roadmap which identifies it as a County-maintained road, and (3) appears on County annual road certification maps from 1993 to 2017 as a County-maintained road. Additionally, there was evidence that a connecting road, QR 51, was also listed as a County road in public records, but the County decertified QR 51 as a public road in a formal process and deleted it from the County's certification maps in 2018. There is no evidence that QR AI was subject to that same decertification process, which indicates that QR AI still had a reputation as public even though a connecting road did not. Moreover, current and former County employees testified that they maintained and bladed QR AI, including the low water crossing, for decades and that the County has made specific repairs to segments of QR AI when needed and when requested by property owners who use QR AI. Finally, a title producer testified that the title company issued the title insurance policy to Caprock for the solar farm under the belief that QR AI was a public road.

{20}     In addition, there was evidence that McFarland's neighbors and their invitees had used QR AI, believing it was a public road, and that other members of the public also used QR AI. McFarland's neighbors, Robert Abercrombie and Dean Hodges,

14

provided affidavit testimony that for more than forty years, users of QR AI, including the low water crossing, believed it was an open road for all to use, and the users did not ask McFarland or its predecessors in title for permission to use QR AI. In their affidavits, Abercrombie and Hodges also stated that McFarland never attempted to stop them from using QR AI, and, although McFarland tried to block the use of QR AI during construction of the solar farm, the neighbors' crossings were never interrupted. McFarland's ranch manager, Ted Quintana, also testified that he observed neighboring landowners using the low water crossing. Additionally, Hodges testified that he observed unknown members of the public traveling on QR AI on a few occasions. This evidence of QR AI's reputation as public as well as the use made by McFarland's neighbors pursuant to that reputation and the use made by other members of the public substantially supports a determination that QR AI has a public character.

{21}     Here and unlike the disputed portion of the road in *Luevano*, there was no evidence that the road's character as public arose as a result of McFarland's business and the use made by its invitees. *See Luevano*, 1994-NMCA-051, ¶ 26. Instead, there is evidence that QR AI had a reputation as a public road because QR AI was listed as a County road in public records for more than twenty years, QR AI was maintained by the County for decades, and McFarland's neighbors as well as a local

15

title company believed that QR AI was an open road for all to use. From the record, it appears that the neighbors' and invitees' use of QR AI arose from its reputation as a public road, not that the reputation as a public road arose as a result of the neighbors' and invitees' use of the road. In addition, there was evidence that unknown members of the public travelled on QR AI on a few occasions.

{22} The district court focused its findings and conclusions regarding the public prescriptive easement mostly on the evidence of County ownership through maps, certifications, and County maintenance. The district court also found that McFarland's neighbors used QR AI without McFarland's express permission and that they never felt the need to ask McFarland for permission. Additionally, McFarland never attempted to stop its neighbors or others from using QR AI. In fact, McFarland made no effort to block the use of QR AI until after construction began on the solar energy farm. Moreover, to the extent that McFarland placed gates near the low water crossing, the presence of gates did not interrupt the use by neighbors or County maintenance. Finally, the district court found that a local title company identified QR AI as a public road based on County road maps and issued a title insurance policy to Caprock for the solar farm under that belief. We hold that the evidence mentioned above substantially supports the district court's findings and its conclusion that the public used QR AI.

{23}     By reweighing the evidence presented to the district court described herein, the Court of Appeals disregarded its obligation to "not reweigh the evidence nor substitute [its] judgment for that of the fact finder." *Las Cruces Pro. Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177. "The question is not whether substantial evidence would have supported an opposite result; it is whether such evidence supports the result reached." *Hernandez v. Mead Foods, Inc.*, 1986-NMCA-020, ¶ 16, 104 N.M. 67, 716 P.2d 645. Specifically, the Court of Appeals relied on testimony from McFarland's president, Kelly McFarland, about not seeing people crossing the property "willy-nilly," and from Quintana, who said he never saw strangers on the property, just neighbors. *McFarland Land & Cattle Inc.*, 2021-NMCA-057, ¶¶ 12-13. The Court of Appeals also gave more weight to Hodges' testimony that public users of the road would get permission, and to testimony from County employees that they never observed members of the public using the road. *Id.* ¶¶ 14-15. While an appellate court may consider all the evidence in its review for substantial evidence, the court may not reweigh evidence and reverse the district court because it would have come to a different conclusion. *See Williams*, 1989-NMCA-008, ¶¶ 7-8. Because there is substantial evidence to support the district court's determination, we affirm the district court's conclusion that a public prescriptive easement existed on QR AI at the low water crossing.

## III. CONCLUSION

{24} The law of public prescriptive easements in New Mexico does not require a showing of a minimum amount of use or number of users, as it is the public character of the road that guides a fact finder's determination of a public prescriptive easement. Here, there is substantial evidence to support the district court's conclusion that the public used the low water crossing and that a public prescriptive easement exists over this portion of QR AI. As a result, we reverse the judgment of the Court of Appeals and affirm the findings and conclusions of the district court. We remand to the district court to enter judgment in favor of Defendants and the County on their public prescriptive easement claim.

{25} **IT IS SO ORDERED.**

_____
**DAVID K. THOMSON, Justice**

**WE CONCUR:**

_____
**C. SHANNON BACON, Chief Justice**

_____
**MICHAEL E. VIGIL, Justice**

18

_____

**BRIANA H. ZAMORA, Justice**


_____

**LISA CHAVEZ ORTEGA, Judge**
**Sitting by designation**